William Scott **KROEGHER,**
Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 79A02–0112–CR–839.**

Court of Appeals of Indiana.

Sept. 17, 2002.

Steven Knecht, Vonderheide & Knecht, P.C., Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

William Scott Kroegher ("Kroegher") was convicted of sexual battery,[1] as a Class D felony, and Battery,[2] as a Class A misdemeanor, in Tippecanoe Superior Court. Kroegher was sentenced to three years for the sexual battery conviction and one year for the battery conviction to be served consecutively. The trial court then suspended one year and ordered Kroegher to serve one year on supervised probation. Kroegher appeals raising the following issues, which we restate as:

I. Whether the trial court abused it discretion when it excluded testimony of Kroegher's alibi witness; and,

II. Whether Kroegher's waiver of right to counsel was voluntary.

We affirm.

### Facts and Procedural History

Lisa Miley ("Miley") and Kroegher lived together from October 1997, to April 2000. On April 28, 2000, Miley and Darren Mickler ("Mickler") were in Miley's ex-husband's apartment, drinking beer, when Mickler saw Kroegher in the hallway of the apartment. Kroegher accused Miley and Mickler of sleeping together, and hit Miley in the neck with a stun gun. Kroegher then left the apartment and Mickler called the police. Officer Chris McCain of the Lafayette Police Department responded to the call. During his conversation with Miley, McCain observed a red mark on her neck. After Officer McCain left, Miley locked the doors to the apartment and went to bed.

Near dawn, Miley woke up to find Kroegher sitting on top of her, hitting her in the face. Kroegher demanded that Miley perform oral sex on him, but she refused to do so. Kroegher then ripped Miley's clothes off, pinned her arms down and had intercourse with her. Tr. pp. 56–57. After Kroegher left, Miley drove to the hospital. Police officers and a hospital nurse observed abrasions and swelling on Miley's face, abrasions on her arms and legs, a bruised and swollen right wrist, and redness on the side of Miley's neck.

The State charged Kroegher with rape, burglary, confinement,[3] sexual battery, and two counts of battery. Kroegher hired an attorney to represent him, but the attorney withdrew citing a breakdown in communication with Kroegher. Appellant's App. p. 18. Kroegher then hired a second attorney who entered his appearance on July 26, 2000. On November 1, 2000, Kroegher's second attorney filed a notice of alibi defense; however, he later filed a motion to withdraw the notice on November 20, 2000, which was granted. On June 15, 2001, Kroegher's attorney filed a motion to withdraw his representation of Kroegher, which was granted. Kroegher then indicated to the trial court that he would be hiring a third attorney; however, the attorney never entered an appearance because Kroegher failed to pay his retainer fee or remain in communication with him. Appellant's App. p. 35. On July 16, 2001, a hearing was held, and after the trial court advised him of the dangers of representing himself, Kroegher informed the trial court that he wanted to proceed

---

1. Ind.Code § 35–42–4–8 (1998 & Supp.2002).

2. Ind.Code § 35–42–2–1 (1998 & Supp.2002).

3. The confinement count was dismissed prior to trial. Appellant's App. p. 4.

*pro se.* Kroegher also asked if he would be permitted to file a motion to re-file his alibi defense and the trial court indicated that Kroegher could file any motion that he felt was in his best interests. Tr. pp. 29–30.

A three-day jury trial began on October 24, 2001. Kroegher proceeded *pro se,* but after he unsuccessfully attempted to cross-examine the State's first witness, the trial court arranged for a standby attorney to be present to advise Kroegher. During trial, despite the fact that his notice of alibi had been withdrawn and he had not re-filed it, Kroegher attempted to introduce the testimony of an alibi witness. The trial court ruled that the testimony was inadmissible; therefore, Kroegher made an offer of proof. The witness testified that on April 29, 2000, Kroegher arrived at his home before 5:00 a.m. and they went mushroom hunting.

Kroegher was found not guilty of rape and burglary, but guilty of sexual battery and the two battery counts. At the sentencing hearing, the trial court entered a judgment of conviction on the sexual battery count and one battery count, but declined to enter judgment on the remaining battery count. Kroegher was sentenced to three years for the sexual battery conviction and one year for the battery conviction, to be served consecutively. The trial court then suspended one year of the sentence and ordered Kroegher to serve one year of supervised probation. Kroegher appeals. Additional facts will be provided as necessary.

## I. Kroegher's Alibi Defense

 Kroegher argues that the trial court abused it discretion when it excluded the testimony of his alibi witness. Indiana Code section 35–36–4–1 provides that when a defendant intends to offer evidence of an alibi at trial, within certain time limits, the defendant shall "file with the court and serve upon the prosecuting at-torney a written statement of his intention to offer such a defense." Ind.Code § 35–36–4–1 (1998). If the defendant fails to file notice of an alibi defense, the trial court "shall exclude evidence offered by the defendant to establish an alibi," unless the defendant can show good cause for his failure to file. Ind.Code § 35–36–4–3(b) (1998); *see also Manning v. State,* 557 N.E.2d 1335, 1337 (Ind.Ct.App.1990), *trans. denied.* "Where there is a showing of good cause for the defendant's failure to [meet] the statute's requirements, however-er, the trial court may admit alibi evidence as a matter of discretion." *Manning,* 557 N.E.2d at 1337 (citations omitted).

 The General Assembly enacted the alibi statute to serve two main purposes. First, the statute protects "the defendant's ability to establish the defense by requiring the State to commit to a particular place and time that it intends to prove at trial as being the particulars of the crime." *Griffin v. State,* 664 N.E.2d 373, 375 (Ind.Ct.App.1996) (citing *Brown v. State,* 436 N.E.2d 285, 287 (Ind.1982)). Recognizing that some defendants will fabricate an alibi, the second purpose of the statute is to allow the State to receive notice before trial regarding the place the defendant claims to have been when the crime was committed. *Id.* (citing *Brown,* 436 N.E.2d at 287). "The alibi statute 'is not intended 'to compel the exclusion of evidence or mandate retrials for purely technical errors.' " *Id.* (quoting *Wilson v. State,* 536 N.E.2d 1037, 1041 (Ind.Ct.App. 1989), *trans. denied* (quoting *Baxter v. State,* 522 N.E.2d 362, 369 (Ind.1988))).

 We also note that the Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to present witnesses on his behalf. *Kellems v. State,* 651 N.E.2d 326, 328 (Ind. Ct.App.1995) (citing *Borst v. State,* 459 N.E.2d 751, 753 (Ind.Ct.App.1984)).

The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id.* (quoting *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)). While the right to present witnesses is of critical importance, the right is not absolute and must sometimes yield to other legitimate interests in the criminal trial process. *Id.*

In this case, Kroegher filed a notice of alibi defense on November 1, 2000. However, twenty days later, Kroegher's attorney filed a motion to withdraw the notice of alibi defense, which was granted on November 27, 2000.[4] The motion stated that "based upon a conference with [Kroegher] on Sunday, November 19, 2000, counsel herein has been authorized to withdraw the Notice of Alibi Defense." Appellant's App. p. 27. Thereafter, said counsel withdrew.

Prior to trial, at a hearing on July 16, 2001, Kroegher, who was proceeding *pro se*, asked the trial court if he would be permitted to file a motion to re-file his alibi defense. Tr. p. 29. The State responded:

The problem Mr. Kroegher is that the Court's really not in a position to give you legal advice. That's going to have to come from a lawyer or you're going to have to do the research and figure it out on your own.

Tr. pp. 29–30. The trial court then stated, "[y]ou can file what you feel is in your best interests, . . . and I'll consider it and we'll go from there." Tr. p. 30. Kroegher did not re-file the notice of alibi defense prior to trial.[5]

In *Harrison v. State*, 644 N.E.2d 1243 (Ind.1995),[6] the defendant filed a notice of alibi defense two days prior to trial and the State filed a motion in limine seeking to exclude the alibi evidence, which the trial court granted. *Id.* at 1245–55. While our supreme court noted, "deadlines imposed in the alibi notice statute cannot be enforced so as to deny a defendant due process of law and a fair trial," it held that the trial court did not err when it granted the State's motion. *Id.* at 1255. The court observed that the defendant did not offer his defense until the last minute and gave no reason for the delay. *Id. See also Denney v. State*, 524 N.E.2d 1301, 1303 (Ind.Ct.App.1988), *trans. denied* (holding that alibi evidence was properly excluded where the defendant made no effort to timely comply with the notice statute and no belated effort to rectify the failure).

■ Here, Kroegher asked the trial court if he would be permitted to re-file his alibi defense more than three months before his trial began. However, he did not

---

**4.** From the record, it appears that Kroegher's second attorney wished to pursue a defense that was inconsistent with an alibi defense.

**5.** At trial Kroegher stated that he did not know that his notice of alibi defense had been withdrawn. Tr. p. 151. This statement appears to be disingenuous in light of his question to the trial court at the July 16, 2001 hearing concerning whether he could re-file

his notice of alibi defense and the statement in the motion to withdraw his notice of alibi defense, which indicated that his attorney had discussed the withdrawal with him.

**6.** We note that a portion of the *Harrison* opinion regarding a Criminal Rule 12(B) issue was superseded by the 1995 revisions to that Rule. *See Allen v. State*, 737 N.E.2d 741, 743 n. 5 (Ind.2000).

re-file and has failed to provide any reason at all for his failure to do so. We are not persuaded by his argument that the State had proper notice of his alibi defense because it was on file for twenty days in November 2000. The notice of alibi defense was withdrawn approximately eleven months before trial; therefore, the State did not have adequate notice that Kroegher intended to call an alibi witness at trial. Under these facts and circumstances, the trial court did not abuse it discretion when it excluded the testimony of Kroegher's alibi witness.

## II. Right to Counsel

 Kroegher also argues that his waiver of right to counsel was not voluntary. "The rights embodied in the Sixth Amendment protect the fundamental right to a fair trial." *Poynter v. State*, 749 N.E.2d 1122, 1125 (Ind.2001) (citing *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). " 'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.' " *Id.* at 1125–26 (quoting *United States v. Cronic*, 466 U.S. 648, 654, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). "Because the 'average defendant does not have the professional legal skills to protect himself' at trial, the Supreme Court has long held that a defendant's choice to appear without counsel must be made intelligently." *Slayton v. State*, 755 N.E.2d 232, 235 (Ind.Ct.App.2001) (citing *Johnson v. Zerbst*, 304 U.S. 458, 462–64, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

 Due to the presumption against a waiver of the fundamental right to counsel, the trial court must "come to a considered determination that the defendant is making a voluntary, knowing, and intelligent waiver." *Poynter*, 749 N.E.2d at 1126. Therefore, "[w]hen a defendant asserts the right to self-representation, the court should tell the defendant of the 'dangers and disadvantages of self representation.' " *Id.* (quoting *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). The following four factors may be considered in determining whether the defendant knowingly and intelligently waived his right to counsel:

(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se.

*Id.* (quoting *United States v. Hoskins*, 243 F.3d 407, 410 (7th Cir.2001)). In *Poynter*, our supreme court also noted that "a verbal waiver of the right to counsel may not be necessary 'so long as the . . . court has given a defendant sufficient opportunity to retain the assistance of . . . counsel, defendant's actions which have the effect of depriving himself of . . . counsel will establish a knowing and intentional choice.' " [7] *Id.* (quoting *Hoskins*, 243 F.3d at 410).

In this case, prior to his decision to proceed *pro se*, Kroegher was represented by two attorneys. His first attorney withdrew due to a breakdown in commu-

---

**7.** Our supreme court also stated that

[t]rial courts need not necessarily appoint counsel for every defendant who fails to implement an intention to employ counsel, nor need they unreasonably indulge a defendant who repeatedly fails to cooperate with appointed counsel, but the importance

of the right to counsel cautions that trial courts should at a minimum reasonably inform such defendants of the dangers and disadvantages of proceeding without counsel.

*Id.* at 1128.

nication with Kroegher, and his second attorney withdrew pursuant to Kroegher's request that he do so. Appellant's App. pp. 18, 32. After his second attorney withdrew, Kroegher attempted to retain a third attorney, but that attorney informed the court that Kroegher had failed to remain in contact with him or pay his retainer fee. Appellant's App. p. 35.

Kroegher contends that "the context in which [he] proceeded pro se was clearly that of desperation ... because he felt he had no choice." Br. of Appellant at 24. On July 16, 2001, the trial court held a pretrial hearing and the following exchange occurred:

KROEGHER: I'm not going to hire [an attorney].

. . .

THE COURT: And why is that?

KROEGHER: Well, I just can't [get] them to agree to what I want, so I'm going to do it by myself.

THE COURT: ... Well, you know, you have the right to be represented by an attorney in this matter.

KROEGHER: Yeah, I realize that.

THE COURT: And if you cannot afford an attorney, the Court can appoint an attorney for you.

KROEGHER: I don't think they need to supply one either.

THE COURT: And you know there's a lot of perils and risk involved in trying to represent yourself in something like this.

KROEGHER: Well, I really don't know what else to do.

THE COURT: Well, you understand that, you know, attorneys have quite a deal of training in representing someone before a jury and they know the Rules of Evidence and they know what constitutional rights you have and they know what questions to ask and what not to ask, they know how to cross examine witnesses. They know how to bring out

testimony that may help you and attempt to—attempt to establish in the jury's mind or otherwise that you're not guilty and require the State to prove that you're guilty, if they can, beyond a reasonable doubt and have the evidence presented in the most favorable light to you. Do you understand that's what attorneys do?

KROEGHER: All they seem to want to do is plead. That's all I see out of them. And I told Mr. Miller in the beginning I would not accept a plea agreement and want to know why he spent all of my money and time working on one.

THE COURT: ... [W]hat I want to tell you is that it's not a good idea to represent yourself—

KROEGHER:—I know it's not—

THE COURT:—in a serious criminal matter, you know. That's what I'm trying to tell you. I'm trying to caution you about that and warn you about that. Obviously, you are the person who has to make the decision on this. I don't make the decision about whether you have an attorney or whether you don't have an attorney, but I just want to say there are a lot of pitfalls involved in trying to do it. I mean, you might just—I mean taking out an appendix might be a very simple thing for people that do it all the time, but you know, for you or I to try to do it wouldn't work out too well. Do you know what I'm saying?

KROEGHER: I know that.

THE COURT: And that's what I'm talking about going to trial here on a serious criminal matter. It's not something one generally attempts to do on their own despite their, you know, their sincerity and their willingness to try that. Now, I understand you have disputes with attorneys and sometimes that comes up, but having said that, I have to tell you that you're increasing your risk

here by not having an attorney to represent you in this matter.

KROEGHER: I really don't know what to do. I—I mean, I have never been to criminal court. I don't know what to do. Every attorney I talk to basically tell[s] me they want to do a plea agreement. That's what they're gonna work on, you know. I'm throwing money away for that. I have witnesses, you know, stating that, you know, the whole thing is a farce and I want to take it to trial. I don't think the jury is going to convict me, you know, it's that easy.

. . .

THE COURT: Well, Mr. Kroegher, you know, you have to make a decision what you want to do here and you can make either decision you want. You're the— you control your own case. I just wanted to let you know what the disadvantages here are.

KROEGHER: Well, I don't want to come here and represent myself. I'm not a lawyer and I'm not dumb, but you know, I've talked to twenty attorneys. None of them seem to do what I want to do, you know. . . . And, you know, it just seems to be the same thing, no matter what, they're going to do what they want to do, no matter what you tell them. So, I really don't know what to do. You know, and I know I'm not smart enough to come in here and represent myself. I'm not a lawyer. I haven't been to school for it or anything else, but I don't see what other choice I have.

Tr. pp. 23–29. The trial court then noted that Kroegher indicated that he had money and could afford to hire an attorney and had never requested that an attorney be appointed. Tr. pp. 30–31.

At trial, as Kroegher was attempting to cross-examine the State's first witness, the trial court informed Kroegher that if he needed assistance, the court would appoint standby counsel. Kroegher then requested that the court appoint standby counsel and standby counsel assisted Kroegher with the remainder of the trial.[8]

While Kroegher verbally expressed to the trial court that he felt his only option was to proceed *pro se*, his conduct indicates otherwise. After Kroegher asked his second attorney to withdraw, he told the court that he intended to hire a third attorney. However, he failed to pay the attorney's retainer fee, despite his ability to do so, and failed to remain in contact with that attorney. The record does not indicate that Kroegher made a concerted effort to hire any other attorney after his second attorney withdrew. Other courts have determined that a defendant may waive his right to counsel by his conduct in firing his attorneys or failing to retain counsel if he has the financial ability to do so. *See e.g., United States v. Irorere*, 228 F.3d 816, 828 (7th Cir.2000) (holding that defendant waived his right to counsel by his conduct where court appointed four separate lawyers all of whom either requested to withdraw or were fired by the defendant); *United States v. Bauer*, 956 F.2d 693, 695 (7th Cir.1992) (finding valid waiver when defendant failed to retain counsel after court determined that defendant had financial ability to so).

At the July 16, 2001 hearing, the trial court adequately advised Kroegher of the dangers of self-representation. Additionally, our review of the record leads us to the conclusion that Kroegher was ably assisted by his standby counsel, particularly in light of the fact that he was acquitted of

---

**8.** After standby counsel was appointed, Kroegher was permitted to continue with his cross-examination of the State's first witness.

the rape and burglary charges. Under these facts and circumstances, we hold that Kroegher's waiver of counsel was voluntary.

### Conclusion

The trial court did not abuse its discretion when it excluded the testimony of Kroegher's alibi witness. Also, Kroegher's waiver of counsel was voluntary.

Affirmed.

BARNES, J., and KIRSCH, J., concur.