Eddie W. HENSON, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 77A01–0304–CR–132.

Court of Appeals of Indiana.

Nov. 14, 2003.

---

Susan K. Carpenter, Public Defender of Indiana, Gregory L. Lewis, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Eddie W. Henson, Jr., appeals his conviction of battery by body waste, a Class D felony.[1] On appeal, he raises one issue, which we restate as whether he knowingly and voluntarily waived his Sixth Amendment right to counsel. The State raises one issue on cross-appeal, which we restate as whether the trial court was required to ensure Henson's waiver of his right to counsel was knowing, voluntary and intelligent even though Henson proceeded with assistance of stand-by counsel. We affirm.

## FACTS AND PROCEDURAL HISTORY

Henson is a resident of the secured housing unit at Wabash Valley Correctional Facility. On March 12, 2002, when Correctional Sergeant Jayellen Baker was walking past Henson's cell, Henson threw liquid feces on her and said, "[H]ow did you like that? That was for Zeabart."[2] (Tr. at 113.)

On April 3, 2002, the State charged Henson with battery by body waste. The court appointed Douglas S. Followell to defend Henson. On September 13, 2002, Henson filed a motion to proceed *pro se.* On September 18, 2002, the court held a pre-trial conference at which the following discussion occurred:

THE COURT: ... So we are having a pre jury hearing this morning and the first thing I guess he has moved to proceed pro se. What do you have to say on that, is there any ...

[FOLLOWELL]: Well Eddie, and I consider Eddie to be a friend Your Honor. He and I have gotten along very well in the past. I understand his feelings regarding his reason for wanting to proceed pro se. I don't have any objection to that. I am not going to argue with my client about that. Eddie has a point somewhat. I think he could adequately represent himself. He is not under any mental condition or his [sic] is not under any medication that would prevent him from understanding the nature of the proceedings. Eddie is an intelligent person kind of self-taught in some ways. But he is very studious in a lot of other ways as well. I think he will be very competent to represent himself. I don't have any doubt that he could do as well as any other inmate in this facility. So if He [sic] wants to proceed pro se I told him the Court, if it were granted, would probably have me assist him. At least sit in on the

1. Ind.Code § 35–42–2–6.

2. Zeabart was, at that time, a correctional officer at Wabash Valley. According to Henson, Officer Zeabart had beaten Henson earlier that same day.

proceedings to advise him should legal questions arise that he may not be familiar with. I don't think Eddie objects to that.

[HENSON]: I have no objection.

[FOLLOWELL]: So,

[HENSON]: Your honor I can defend myself, defending myself. That is what I am here for is defending myself. As I put in the Motion there I will treat this Court and Mr. Hunley with utmost respect.

THE COURT: Now who represented you in the case that you have in Circuit Court, who is Your Attorney?

[HENSON]: That is Mr. Followell here and he did a fine job and he is a fine Attorney. This only has got to do something with a conflict of interest. I cannot understand how this man or any other public defender of this County can represent me while being in bed with the same people who are savagely beating me and other inmates. That is a conflict of interest Your Honor.[3] With all due respect I would like to go pro se sir. I will not make a circus of your Court, Your Honor.

[discussions regarding scheduling, discovery, and Henson's defense theory]

THE COURT: Okay, all right. Well we will grant your motion to proceed pro se. We will make Mr. Followell a stand-by counsel for the trial purposes and then we will have a trial scheduled for February the 5th.

(Tr. at 10–13) (footnote added).

A jury tried Henson on the 4th and 5th days of February 2003. Stand-by counsel Followell conducted *voir dire* of the jury and closing arguments. Henson presented his opening statement and cross-examined the State's witnesses. The jury found Henson guilty as charged. The trial court sentenced Henson to three years imprisonment.

## DISCUSSION AND DECISION

### 1. *Constitutional Context*

■ The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel. *Jones v. State*, 783 N.E.2d 1132, 1138 (Ind.2003). In fact, we have previously noted the right to counsel is probably the most important right a defendant has because that right

---

3. The trial court or Followell should have attempted to correct Henson's misperception regarding his "public defender ... being in bed with" correctional officers. (Tr. at 11.) Public defenders are not controlled by and do not have a loyalty to the State or any employee of the State. *See Wright v. State*, 436 N.E.2d 335, 338–40 (Ind.Ct.App.1982) (noting the Sixth Amendment requires the State to "respect the independence of the public defender" and the code of professional responsibility requires attorneys to resist outside pressure, even from third parties who pay for the defendant's representation). *See, e.g., Wisehart v. State*, 693 N.E.2d 23, 56 (Ind.1998) (holding "the political nature of appointments of public defenders" and "counsel's alleged attendant lack of independence from the trial judge" do not create a presumption of ineffective assistance based on a conflict of interest),

*reh'g denied, cert. denied* 526 U.S. 1040, 119 S.Ct. 1338, 143 L.Ed.2d 502 (1999); *Smith v. State*, 465 N.E.2d 1105, 1119 (Ind.1984) (public defender's former employment as a prosecuting attorney did not create a conflict of interest, because prosecutors represent the State, not police officers). Rather, their allegiance lies with the clients they represent. *See* Ind. Rules of Professional Conduct, Rule 1.8(f) ("A lawyer shall not accept compensation for representing a client from one other than the client unless: ... 2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and (3) information relating to representation of a client is protected as required by Rule 1.6."); *Id.*, Rule 2.1 ("In representing a client, a lawyer shall exercise independent professional judgment and render candid advice.").

can affect a defendant's ability to assert all his other rights and because most defendants do not have the professional legal skills necessary to represent themselves adequately. *Kroegher v. State*, 774 N.E.2d 1029, 1034 (Ind.Ct.App.2002), *trans. denied* 783 N.E.2d 701 (Ind.2002).

The Sixth Amendment also provides defendants with a right to proceed *pro se*. *Wallace v. State*, 553 N.E.2d 456, 460 (Ind.1990) (citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)), *cert. denied* 500 U.S. 948, 111 S.Ct. 2250, 114 L.Ed.2d 491 (1991). However, before a defendant waives his right to counsel and proceeds *pro se*, the trial court must determine the defendant's waiver of counsel is knowing, voluntary, and intelligent. *Jones*, 783 N.E.2d at 1138. The law "indulges every reasonable presumption against a waiver of this fundamental right." *Poynter v. State*, 749 N.E.2d 1122, 1126 (Ind.2001). Whether a defendant's waiver is knowing, intelligent, and voluntary depends on the particular facts and circumstances of the case. *Jones*, 783 N.E.2d at 1138.

While we have previously suggested guidelines a trial court could follow when advising a defendant regarding self-representation, *see Dowell v. State*, 557 N.E.2d 1063, 1066–67 (Ind.Ct.App.1990),[4] *trans. denied, cert. denied sub nom. Indiana v. Dowell*, 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991), our supreme court has held that trial courts need not follow those guidelines as a rigid mandate.

*Leonard v. State*, 579 N.E.2d 1294, 1296 (Ind.1991). Rather, the trial court must "acquaint the defendant with the advantages to attorney representation and the drawbacks of self-representation." *Jones*, 783 N.E.2d at 1138. The record should establish the defendant made his choice to proceed *pro se* with his eyes open. *Osborne v. State*, 754 N.E.2d 916, 920–21 (Ind.2001).

## 2. *Necessity of Warnings*

The State claims the trial court did not have to ensure Henson's waiver of his right to counsel was knowing, voluntary, and intelligent because Henson "did not proceed *pro se*. Rather, he proceeded with the assistance of counsel, and . . . [t]his type of hybrid representation does not require the court to advise Defendant of the perils and disadvantages of self-representation." (Appellee's Br. at 5.)

Neither the State nor Henson offers us authority indicating whether the Sixth Amendment requires the trial court to ensure the waiver of counsel is knowing, voluntary, and intelligent when a defendant proceeds *pro se* with assistance from appointed counsel. However, our independent research uncovered *Carter v. State*, 512 N.E.2d 158 (Ind.1987), in which our supreme court addressed whether a defendant who participated in his defense with assistance from appointed counsel could claim a violation of his Sixth Amendment right to assistance from counsel. The

4. In *Dowell*, we suggested the trial court should inquire about the defendant's education, mental capacity, and familiarity with legal procedure and evidence rules and inform the defendant: (1) about "the nature of the charges against him, the possibility that there may be lesser included offenses, and the possibility of the defenses and mitigating circumstances;" (2) that self-representation "is almost always unwise, that he may conduct a defense which is to his own detriment, that he will receive no special treatment from the court and will have to abide by the same standards as an attorney, and that the State will be represented by experienced legal counsel;" and (3) "that an attorney has skills and expertise in preparing for and presenting a proper defense." *Dowell*, 557 N.E.2d at 1066–67.

court's discussion in that case is informative:

Carter chose to be represented by both his attorney and himself. Although an accused has the constitutional right to represent himself or be represented by counsel, neither the federal nor the state constitution accords him the right to do both at once. The trial court had the discretion to grant or deny Carter's request to act as co-counsel. Inasmuch as such requests are rarely granted in Indiana, Carter's allegation of ineffective assistance of counsel under these circumstances is a novel claim.

Distinctly different policies underlie the right to counsel and the right to self-representation. The policy supporting the right of self-representation is personal autonomy. The defendant is the one who must suffer the consequences of his decision as to counsel; hence, he is entitled to choose his advocate, a lawyer or himself. The purpose of the Sixth Amendment guarantee of representation is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights and to assure him the guiding hand of counsel at every step in the proceeding.

When an accused elects to be represented by counsel, he surrenders to his attorney the right to make certain binding decisions concerning trial strategy. The Supreme Court of Kansas explicitly held that a defendant who accepts counsel has no right to conduct his own trial or dictate the procedural course of his representation by counsel. The Tenth Circuit and the Michigan Court of Appeals have similarly ruled.

\*     \*     \*     \*     \*     \*

The thrust of the precedent on [the rights a client surrenders to his attorney] is that an accused may not command all decisions of trial strategy and procedure unless he intends to represent himself. In light of this concept and the unique facts at hand, we believe Carter's form of representation was most like that of a defendant who proceeds pro se but also relies on standby counsel.

Despite the public defender's representation, Carter remained the captain of his defense team, calling all of the plays with the help of his veteran teammate, the public defender. Carter obtained discovery, filed several pre-trial motions, deposed witnesses and made arguments during court hearings, as did appointed counsel. At one point, Carter possessed discovery documents in his jail cell which appointed counsel did not have. The record also shows that certain trial strategies were employed at Carter's insistence, despite counsel's advice to the contrary. The record, as a whole, suggests that Carter retained the services of the public defender primarily to conduct the investigation which Carter's incarceration prevented him from doing. Carter otherwise appeared to control his own defense.

At trial, Carter cross-examined the State's chief witnesses, including the accomplice Logan. Other witnesses were questioned by both Carter and his public defender, and evidentiary objections arose from both. While Carter showed a rudimentary knowledge of law, he proved to be relatively ineffective as his own advocate. He had been warned by the trial judge beforehand about the hazards of participating in his own defense. The court also made clear that as "co-counsel" Carter would be held to the same standards as a practicing attorney.

While the trial court chose to describe Carter as "co-counsel," the facts show that Carter represented himself with the help of the public defender acting as a

liberally defined "standby counsel." When Carter chose to take control of his own defense, under the pretext of acting as "co-counsel," he waived his right to allege a Sixth Amendment violation with respect to counsel's adequacy. By alleging his attorney ineffective, Carter, in essence, is alleging himself ineffective; he not only was actively participating in his own defense but effectively managing the activities of the public defender. This was not a situation in which the public defender listened to the advice of his client and then pursued independently the route which he believed, in his professional judgment, was most beneficial. Carter defined the public defender's responsibilities and had the final say on all trial decisions.

Accepting Carter's allegation of ineffectiveness of counsel would distort the Sixth Amendment. He has attempted to take the benefits of his constitutional right to self-representation without accepting the burdens which are inherently attached. When he chose to circumscribe "the guiding hand of counsel" and navigate his own defense, Carter voluntarily traveled into the murky waters outside the safe harbor of the Sixth Amendment and sank any claim of ineffective assistance of counsel.

Practical considerations also support this conclusion. To allow Carter to participate in his defense to such an extent and then to assert this claim would encourage conduct contrary to the tenets of our judicial system. One of the essential reasons for counsel is the orderly pursuit of justice, a[n] objective which is at risk whenever an accused plays the role of courtroom advocate. Defense efforts may be repetitious or contradictory when the defendant, as co-counsel, and his appointed attorney follow different legal routes. A particularly manipulative defendant might contravene his public

defender's actions simply to create appealable error. Moreover, the law will not recognize errors which could have been remedied at the trial level. As co-counsel, Carter had the duty to speak if counsel was inappropriately silent.

We note in conclusion that our rejection of Carter's ineffectiveness claim rests upon his own substantial control of the defense. Had counsel been a true advocate within the meaning of the Sixth Amendment, rather than a tool for implementing Carter's self-representation, Carter certainly would have been entitled to present this claim.

*Carter*, 512 N.E.2d at 162–64.

Essentially, the *Carter* court held that whether a defendant may claim ineffective assistance from stand-by counsel depends on whether hybrid representation is more akin to a defendant proceeding *pro se* or is more akin to a defense controlled by counsel. *See id.* at 164. The right to knowingly and intelligently waive counsel and the right to effective assistance from counsel are, metaphorically speaking, two sides of the same Sixth Amendment coin. Therefore, the same types of facts that helped the supreme court determine whether Carter could claim ineffective assistance from hybrid counsel help us determine whether the trial court should have ensured Henson's waiver of counsel was knowing, voluntary, and intelligent even though he proceeded with hybrid counsel.

Our review of the record leads us to believe Henson's hybrid representation was more akin to proceeding *pro se* and the trial court, therefore, was required to ensure Henson's waiver of counsel was knowing and voluntary. After the court ordered Henson could proceed *pro se*, Followell conducted *voir dire*, presented closing argument, and filed a motion for extension of time to produce evidence.

However, Henson took all other actions in the case. Henson conducted opening arguments, agreed to the admission of the State's exhibits during trial, cross-examined the State's witnesses, presented his testimony from the stand without questioning from an attorney, argued with the trial court regarding the admissibility of videotapes, and engaged in all discussions with the trial court regarding the proceedings.

In addition, when Followell presented closing argument, he attempted to give some background information about Henson's experience at Wabash Valley, presumably to explain why Henson had thrown the feces on Correctional Sergeant Baker. The State objected, the trial court sustained the objection, and the following exchange occurred:

> [FOLLOWELL]: [Argument] is not evidence Your Honor.
>
> THE COURT: Well Mr. Followell I know it is not evidence but you can't be, you are introducing facts the jury has never heard anything about any of this stuff before.
>
> [FOLLOWELL]: Well that is because Eddie acted pro se Your Honor.
>
> THE COURT: Well you can't change that. You can't now start introducing evidence that is not in.
>
> [FOLLOWELL]: All that information. He filed a discovery request and he had all that information in his packet. The jury wasn't presented with that.
>
> THE COURT: Well I am going to limit you on the evidence that has been presented during the trial in your final argument.

(Tr. at 158.) Followell's comments to the trial court indicate Henson's defense would have proceeded differently, and additional evidence would have been admitted, if Followell had been controlling Henson's defense.

In conclusion, following the trial court's order that Henson could proceed *pro se* with the assistance of stand-by counsel, Henson took most of the actions that occurred in his case, and Followell was not permitted to take action without Henson. Accordingly, we hold Henson "remained the captain of his defense team" and had "substantial control of the defense." *Carter*, 512 N.E.2d at 163, 164.

### 3. *Validity of Henson's Waiver*

■■■ Henson claims he did not knowingly and intelligently waive his right to counsel because the trial court did not warn him of the dangers and disadvantages of proceeding *pro se*. We review *de novo* a trial court's determination the defendant knowingly and intelligently waived his right to counsel. *Ellerman v. State*, 786 N.E.2d 788, 794 (Ind.Ct.App.2003). The factors we consider when reviewing the trial court's decision include: 1) the court's inquiry into the defendant's decision; 2) other evidence establishing whether the defendant understood the dangers and pitfalls of self-representation; 3) the defendant's background and experience; and 4) the context in which the defendant proceeded *pro se*. *Poynter*, 749 N.E.2d at 1127–28.

Henson received no warnings regarding the dangers and disadvantages of proceeding *pro se*. Recently, we explicitly held "absent exceptional circumstances, the advisement of warnings [regarding the dangers of self-representation] is, indeed, a condition precedent to a defendant's invocation of the right of self-representation." *Miller v. State*, 795 N.E.2d 468, 469 (Ind. Ct.App.2003). Accordingly, absent exceptional circumstances, Henson's decision was not knowing and voluntary, *see id.*, and we will be compelled to reverse. Therefore, we turn to the other three

*Poynter* factors to determine whether "exceptional circumstances" existed in this case.

As for the first factor, the trial court did not inquire why Henson wanted to proceed *pro se.* However, Henson volunteered information to the court indicating his decision was based on his perception that his public defender would be unable to represent him adequately due to a conflict of interest. In addition, Followell's statement to the court indicted that he and Henson had discussed Henson's desire to proceed *pro se.*

As for the third factor, the defendant's background and experience, we note that Henson must have some experience with the legal system because he resides at Wabash Valley Correctional Facility. Followell indicated he knew Hanson well and stated, "I think he could adequately represent himself. He is not under any mental condition or ... medication that would prevent him from understanding the nature of the proceedings.... I don't have any doubt that he could do as well as any other inmate in this facility." (Tr. at 10.) Moreover, if Henson had any problems during trial with legal procedures, Followell was there to answer his questions.

Finally, under the fourth factor, the context of the decision, the trial court is to consider "whether the defendant's decision appears tactical or strategic in nature or seems manipulative and intending delay." *Poynter,* 749 N.E.2d at 1128 n. 6. Clearly, Henson believed representing himself was to his strategic advantage because he thought the public defender had a conflict of interest. Henson was insistent that he wanted to represent himself and that he was the one best able to defend himself.

In light of the discussion with the trial court and of Henson's assistance by standby counsel, exceptional circumstances existed in this case. Even without a specific discussion of the dangers and disadvantages of proceeding *pro se,* Henson's waiver of his right to counsel was knowing and voluntary. Accordingly, we affirm the judgment of the trial court.

Affirmed.

DARDEN, J., and BARNES, J., concur.