**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MATTHEW D. ANGLEMEYER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BENJAMEN BENJAMEN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1210-CR-524 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Rebekah F. Pierson-Treacy, Judge
Cause No. 49F19-1206-CM-43003

**July 8, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SULLIVAN, Senior Judge**

Benjamen Benjamen appeals his conviction for resisting law enforcement, a Class A misdemeanor. We affirm.

In the early morning hours of June 24, 2012, Officer Stephanie Herr of the Indianapolis Metropolitan Police Department was at a parking lot in Indianapolis, directing people to move on. She saw an individual, later identified as Benjamen, walking through the parking lot toward an enclosure that contained a trash can. Benjamen had placed his hand on his zipper, and Herr surmised that he intended to urinate behind the trash can. Herr shined her flashlight on him and said, "[D]on't do it," but Benjamen did not respond and walked behind the trash can. Tr. pp. 19, 44.

Herr walked over to the trash can and saw Benjamen zip up his pants. He said he was not out in public and started to walk away from the trash can. Herr told him to leave the parking lot, but Benjamen said he could not be arrested because he did not do anything wrong. Herr told him to leave the premises or he would be arrested for public indecency, but Benjamen shouted that he could not be arrested. At that point, Herr told him to put his hands behind his back. She grabbed his left arm and put one handcuff on him, but he turned around toward her "[t]rying to get away from the cuffs." Id. at 21.

Herr radioed for assistance and told Benjamen to turn around and put his hands behind his back. He refused and continued trying to turn around while saying he did not do anything wrong. Herr pushed Benjamen against a wall and put the other handcuff on him, but he continued trying to turn around. At that point, other officers arrived and put Benjamen on the ground. He moved around on the ground in an attempt to keep the officers from searching him. In addition, Benjamen told them that Herr was lying. The

2

officers stood him up and moved him toward a police car, but he kept struggling and shouting that he had done nothing wrong. Benjamen was eventually transported to jail.

The State charged Benjamen with resisting law enforcement and with public nudity, a Class C misdemeanor. On June 24, 2012, Benjamen appeared before a master commissioner for an initial hearing. The commissioner entered a plea of not guilty and scheduled another hearing. The commissioner also provided Benjamen with a written advisement of rights, which Benjamen read and signed. During the hearing, the commissioner advised Benjamen of the following:

> Do you know from the paper that you read that you have the right to be represented by an attorney? You should hire an attorney just as soon as you can to be able to be with you at your hearing and represent you to defend against the possibility of having to go to jail. If you try to hire an attorney and you're not successful be prepared to explain that to the Judge, who you talked to, what they told you or why you weren't able to hire one of those attorneys and that will help the Judge at the hearing decide if the Court should step in to assist you in acquiring counsel.

Id. at 102. At the end of the hearing, the following discussion occurred:

[BENJAMEN]:   May I say something?

[COMMISSIONER]:  It depends because one the of the things that you read about in the form was the right against self-incrimination so I advise people who are here like you are and don't have an attorney here right now that you shouldn't really say anything about the situation involved in your arrest or anything related to the facts of the case because you might think telling me something will help me understand but the risk you take is that whatever you say can be used against you and this is being recorded and the prosecutor could listen to it so I really don't want you to volunteer any information.

3

| [BENJAMEN]: | All right. |
|---|---|
| [COMMISSIONER]: | Until you've had a chance to talk to a lawyer. |
| [BENJAMEN]: | I mean I'm confident in saying that these charges are totally false and made up. |
| [COMMISSIONER]: | I'm going to stop you right there. |
| [BENJAMEN]: | But I – |
| [COMMISSIONER]: | Because I'm not the guy that needs to hear that. |
| [BENJAMEN]: | Uh huh. |
| [COMMISSIONER]: | Your attorney is the person that needs to hear that. Say that to your attorney so your attorney can be ready to help you evaluate what to do about it. |

Id. at 103-04.

On June 27, 2012, Benjamen appeared before the trial court with other defendants for a pretrial conference. The court placed Benjamen under oath. Next, the court asked Benjamen if he had ever been diagnosed with a physical or mental disability. Benjamen asserted that he had a ruptured disc and a pinched spinal nerve, but other than those conditions he did not identify any disabilities. The court advised him as follows:

> What we are going to do is set all of your cases for a review of counsel and by the time that you come back to Court Nineteen you will have decided whether you want to represent yourself, which you have a constitutional right to do. Whether you want to hire an attorney, which you also have a right to do. If you think that you qualify for a public assistance attorney, bring financial information. If you are working, what your paycheck stub is. If you are in school, how many credit hours you are taking. If you have any money in the bank, if you are not working or that you are looking for a job or what's going on with that.

4

Id. at 111.  Benjamen asked the trial court to move up the date of the next hearing, asserting "I'm trying just to get it over quickly.  [']Cause like I said, these are all false charges."  Id. at 113.  In the course of discussing possible dates, Benjamen said, "I don't plan on gettin' an attorney."  Id.  The court responded, "Okay.  I don't want to hear all of those—that information.  I want to know what day you are talking about."  Id. at 113-14.

On July 6, 2012, Benjamen appeared before the trial court for another pretrial conference.  The trial court again placed Benjamen under oath.  Next, the court asked Benjamen whether he had any medical conditions, and he said he occasionally experienced seizures.  The court questioned him about income, and he said he made $340 every two weeks.  Benjamen further stated he had no child support or other dependents, but he paid $75 in rent every two weeks to his mother and stepfather.  Subsequently, the following discussion occurred:

| [COURT]: | Okay.  And if you want a public defender, you qualify for one.  If not you can represent yourself or hire your own attorney.  What do you want to do? |
|---|---|
| [BENJAMEN]: | Represent myself. |
| [COURT]: | You don't want a free public defender? |
| [BENJAMEN]: | No, I do not. |
| [COURT]: | Oh, I don't know why I went through all that.  Okay.  You certainly have a right to do that.  So, you need a Waiver of Attorney form.  They will give that to you; fill it out and give it back to him.  Walk around that way and when you are finished with it, again, give it back to him and we will deal with that. |

5

Id. at 123.  Benjamen wrote on the form that he was born in 1978, had completed three

years of college, was of sound mind, and could read, write, and understand English.  The

form further provided, in relevant part:

6.  I understand that I am entitled to have my rights explained to me and that I have the right to have any questions I may have answered for me.

7.  I understand that I have the following rights; [sic]

   a.  the right to a public and speedy trial by jury. [sic]
   b.  the right to use the power of the Court to compel production of any evidence including the attendance of witnesses in my favor;
   c.  the right to see and hear all witnesses against me and to question them at trial: [sic]
   d.  the right to the assistance of an attorney at every stage of the proceedings against me: [sic] if I cannot afford to employ an attorney, the Court will provide an attorney for me in this case.  I further understand that I have a right to have an attorney provided by the Court even if I am guilty of the offense charged. [sic]
   e.  the right to require the State to prove my guilt beyond a reasonable doubt at a trial at which I may not be compelled to testify against myself; and
   f.  the right to appeal any conviction in this Court to a higher Court.

8.  A defendant who chooses to represent himself or herself will not be given special consideration and cannot later make claim of his lack of assistance of counsel.  A person who represents himself or herself is held to the same rules of evidence and procedure as are trained counsel.  An attorney has skills and expertise not possessed by a non-lawyer in preparing for and presenting a proper case.  These include, among other things:  (1) preparation of appropriate pleadings; (2) investigating and interrogating witnesses; (3) gathering appropriate documentary evidence; (4) obtaining favorable witnesses; (5) preparing and filing pre-trial motions; (6) presenting favorable opening and closing statements; (7) examining and cross-examining witnesses at trial; (8) preparing appropriate written

6

instructions for the jury; and (9) recognizing objectionable, prejudicial evidence and testimony and mak[ing] proper objections.

9.     Further, an attorney is usually more experienced in plea negotiations, possibly bargaining for a reduced sentence or fewer counts, and better able to identify and evaluate any potential defenses and evidentiary or procedural problems in the prosecutor's case. See Hopper v. State, 934 N.E.2d 1086 (Ind. 2010). In addition, certain charges could be enhanced if you were to have future charges filed against you. This means that a future charge(s), if you were to have future charges filed against you, could become a higher level of charge and/or have a longer sentence due to this guilty plea: [sic] an attorney could fully instruct you on such issues.

10.    If you choose to continue to represent yourself, the Court will not grant you a continuance during trial so that you may seek counsel.

11.    The Court has advised me in representing and defending myself that, [sic] I:

   a.     Must follow proper and appropriate pretrial, trial, and post-trial procedures,
   b.     Must comply with all the rules of evidence and substantive law, and
   c.     Must proceed under and comply with the same rules as an attorney.

12.    I declare that no person has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive any favors, special treatment or any other form of leniency if I would decide not to have an attorney defend me in this case. I declare that no person has made any threat of any kind to me, or within my knowledge to anyone else, to coerce me not to have an attorney defend me in this case. I declare that this Waiver is made and executed by me freely, knowingly, understandingly, and voluntarily.

I believe and feel that I fully understand the proceedings in this case against me and I understand my right to be represented by an attorney.

**I DECLARE THAT I DO NOT WANT TO BE DEFENDED BY AN ATTORNEY IN THIS CASE**.

7

It is my desire that the Court proceed with the trial of this case.

The Court has further advised me that I will receive no special favors, and that, in the Court's opinion, representing myself is not advisable.

Appellant's App. pp. 20-21. Benjamen signed and dated the form.

After Benjamen had an opportunity to read the form, the court discussed with Benjamen the charges against him and the potential penalties and ensured that they were accurately set forth on the waiver of counsel form. Then, the following colloquy occurred:

| | |
|---|---|
| [COURT]: | Okay, I wrote on this. Did you read this—I'm going to let you sign it, but did you read the whole document? |
| [BENJAMEN]: | I read the document. |
| [COURT]: | Okay. Give that to him please, to sign it. So do you have any questions about that document? |
| [BENJAMEN]: | No. |
| [COURT]: | Do you understand it? |
| [BENJAMEN]: | Yes, Ma'am. |
| [COURT]: | Okay. And you want to give up your right to an attorney and represent yourself? |
| [BENJAMEN]: | Yes, Ma'am. |
| [COURT]: | All right. I'm going to accept that as being done knowingly and intelligently and voluntarily. And you can read and write and understand the English language, correct? |
| [BENJAMEN]: | Yes, Ma'am. |
| [COURT]: | And you said you had college, a few years of college, right? |

[BENJAMEN]:        Yes, Ma'am.

Tr. p. 125. The court then scheduled the case for a bench trial.

The parties appeared for trial on September 24, 2012. Benjamen, representing himself, began his opening statement as follows:

[BENJAMEN]:        Okay. All right, yeah. I would first like to say that my representing myself is primarily due to my lack of financial means to attain—

[COURT]:           No, no, no, no. No, stop right there.

[BENJAMEN]:        All right.

Id. at 7. The court then asked Benjamen about his current financial circumstances, and he reported that he was making less money than he had at the time of the previous hearing, about $300 per month. The following discussion then occurred:

[COURT]:           And I wrote down on here that you refused the public defender fee. That's fifty dollars for the whole case.

[BENJAMEN]:        Your Honor, that—what I was trying to continue to say was that I—I was under the—I didn't have the means to provide the (indiscernible) that I really felt. To passionately address and fight for my—again on my behalf for what I know the truth is of this matter. So as a means, knowing that it is important that not only justice is truly served but that the truth is told. I felt that that was the best route for me so I just wanted to express that it wasn't a matter of me trying to be disrespectful to the courts or speakin' badly about you know anybody else. It was just the matter of me feelin' in my heart that this was the best way for the truth to be told on my behalf versus me just being told just accept the plea bargain. Because again, like I said, I was—

[COURT]:           Did you talk to the public defender about this case?

9

[BENJAMEN]: I talked to—I talked—I was approached—

[COURT]: It is a very simple question, on this particular case did you talk to the public defender?

[BENJAMEN]: No, I—no, I did not. No, I did not.

\* \* \* \*

[COURT]: I want to get this clear, and you can say more if you want. You are refusing to take the public defender.

[BENJAMEN]: Um hm. (Affirmative answer)

[COURT]: Is that correct?

[BENJAMEN]: Refusing?

[COURT]: Yes.

[BENJAMEN]: I chose—I chose—I chose to defend myself. I didn't refuse a public defender. I just—

[COURT]: Okay, let's get this clear then. We are not moving on until we get this issue clear.

[BENJAMEN]: All right.

[COURT]: You can have a public defender for either fifty dollars or—

[BENJAMEN]: All right, which I didn't have to afford (sic).

[COURT]: Well, you know we all make choices, but—or you can perform eight hours of community service work for their services.

[BENJAMEN]: For a public defender?

[COURT]: That's what I just said.

[BENJAMEN]: I was not aware of that.

10

Id. at 11.  The court then questioned Benjamen to establish that he did not have any physical disabilities that would prevent him from performing community service work. Finally, the following discussion occurred:

| | |
|---|---|
| [COURT]: | If you want a public defender, you can have them for either paying fifty dollars or performing eight hours of community service. |
| [BENJAMEN]: | Okay, I— |
| [COURT]: | And that is your choice. |
| [BENJAMEN]: | I—and I— |
| [COURT] | You are—you haven't been—have you been diagnosed by a doctor a [sic] being mentally disabled. |
| [BENJAMEN]: | I'm not mentally disabled at all. |
| [COURT]: | Okay, so you can make your choice. |
| [BENJAMEN]: | Right. |
| [COURT]: | Knowingly. |
| [BENJAMEN]: | Yes, I can. |
| [COURT]: | What's your choice? |
| [BENJAMEN]: | And my choice is to still defend myself, Your Honor. |
| [COURT]: | Okay, so refusing the public defender. |
| [BENJAMEN]: | Yes. |
| [COURT]: | And to represent yourself? |
| [BENJAMEN]: | Yes, Ma'am. |

11

Id. at 12-13. The bench trial proceeded. After the presentation of evidence and closing statements, the court found Benjamen not guilty of public nudity but guilty of resisting law enforcement. The court heard argument from the parties as to sentencing options and sentenced Benjamen to 365 days, with four days' credit and the remainder to be served on non-reporting probation. At Benjamen's request, the court appointed appellate counsel for him, and this appeal followed.

Benjamen raises one issue, which we restate as: whether Benjamen knowingly, voluntarily, and intelligently waived his right to counsel. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel. Jewell v. State, 957 N.E.2d 625, 628 (Ind. 2011). The Sixth Amendment also provides defendants with a right to proceed pro se. Henson v. State, 798 N.E.2d 540, 544 (Ind. Ct. App. 2003), trans. denied. Before a defendant waives his right to counsel and proceeds pro se, the trial court must determine whether the defendant's waiver of counsel is knowing, voluntary, and intelligent. Id.

Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive because it affects his ability to assert any other rights he may have. Poynter v. State, 749 N.E.2d 1122, 1125-26 (Ind. 2001). Consequently, the law indulges every reasonable presumption against a waiver of the right to counsel. Henson, 798 N.E.2d at 544. We review de novo a trial court's determination that the defendant knowingly, voluntarily, and intelligently waived his right to counsel. Id. at 547.

Whether a waiver of the right to counsel and an exercise of the right to proceed pro se was knowing, voluntary, and intelligent will depend upon an array of case-specific

12

factors. Hopper v. State, 957 N.E.2d 613, 619 (Ind. 2011). These factors include: (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se. Id. at 618.

In the current case, over the course of three hearings the trial court inquired as to Benjamen's medical circumstances, including mental or physical disabilities. The court also asked Benjamen at the July 6, 2012 hearing about his ability to earn a living, his age, and his educational history. Furthermore, during that hearing the court ensured that Benjamen had reviewed and understood the advisements in the waiver of counsel form that Benjamen signed. Also, during the July 6, 2012 hearing and at trial, the court questioned Benjamen extensively to ensure that he was aware: (1) he was entitled to a public defender, and (2) arrangements could be made for Benjamen to pay the public defender fee through community service. These facts establish that the court carefully inquired into Benjamen's decision to waive his right to counsel and exercise his right to proceed pro se.

Turning to the next factor, there is other evidence that Benjamen understood the dangers of self-representation. At Benjamen's initial hearing, the master commissioner advised him to "hire an attorney just as soon as you can to be able to be with you at the hearing and represent you to defend against the possibility of having to go to jail." Tr. p. 102. When Benjamen asserted that the charges against him were without merit, the commissioner further advised him that he should talk to an attorney about his case. In

13

addition, the waiver of attorney form, which Benjamen told the court under oath that he had read and understood, set forth a long list of trial-related tasks that an attorney has special skill in handling, including spotting weaknesses in the State's case, questioning witnesses at trial, and making proper objections at trial. The document further advised Benjamen that he would be held to the same standards of performance as an attorney. Finally, the waiver form bluntly told Benjamen, "in the Court's opinion, representing [your]self is not advisable." Appellant's App. p. 21. These facts show that Benjamen was made aware of the perils of representing himself, and "the warnings issued were sufficient to appraise the defendant of the dangers he is facing in the particular matter at hand." Kubsch v. State, 866 N.E.2d 726, 736 (Ind. 2007).

The third factor is the background and experience of the defendant. At the time of his trial, Benjamen was thirty-four years of age. He had attended three years of college. Although Benjamen had some medical conditions, he denied any mental disabilities. He maintained a residence, renting from his mother and stepfather. Furthermore, this was not Benjamen's first experience with the legal system. He has two prior misdemeanor convictions, which apparently were resolved through alternative misdemeanor sentencing. Benjamen also admitted at trial that he had a felony conviction in connection with a stolen car. This evidence indicates that Benjamen was an educated person with an understanding of the risk he was taking by representing himself.

Finally, we turn to the context of Benjamen's decision to proceed pro se. A defendant who waives his right to counsel for strategic reasons tends to do so knowingly. Id. at 738. Here, Benjamen concedes that his "decision to represent himself was a

strategic one." Appellant's Br. p. 15. At trial, he told the court representing himself "was the best way for the truth to be told on my behalf versus me just being told just accept the plea bargain." Tr. p. 9.

Having considered the four factors identified by our Supreme Court, under the facts and circumstances of this case we conclude that the trial court correctly determined that Benjamen knowingly, voluntarily, and intelligently waived his right to counsel and chose to exercise his right to proceed pro se. See Taylor v. State, 944 N.E.2d 84, 91 (Ind. Ct. App. 2011) (determining the trial court sufficiently advised Taylor of the pitfalls of proceeding pro se because the court's inquiry was "not superficial," Taylor had past experience with the justice system, and Taylor was made aware of the advantages of having an attorney).

Benjamen cites Spears v. State, 621 N.E.2d 366 (Ind. Ct. App. 1993), to support his claim that he was insufficiently advised of the dangers of proceeding pro se. In that case, Spears told the court at his initial hearing that he wanted to represent himself. At a subsequent hearing that was not recorded, Spears signed two forms that discussed his right to proceed pro se and the perils of going forward without counsel. A panel of this Court concluded that the forms, standing alone, failed to establish that Spears made a fully informed decision to waive counsel, particularly because Spears noted on one of the forms that he could not read English.

In Benjamen's case, the trial court held a hearing on the record regarding Benjamen's waiver of the right to counsel. During the hearing, the court took a recess to allow Benjamen to review the waiver of counsel form. After the recess, the court asked

15

Benjamen if he had read the form and understood it, and Benjamen said he had. Furthermore, Benjamen said he had no questions about the form and indicated that he could read English. Thus, unlike in Spears, Benjamen received a hearing on the record where he was informed of his right to counsel and the risks of proceeding pro se. Furthermore, unlike in Spears, at trial the court questioned Benjamen at length to ensure that he understood he had a right to court-appointed counsel and that he would not be denied counsel due to lack of funds. For these reasons, Spears does not compel reversal here.

In a related argument, Benjamen claims his waiver of his right to counsel was invalid because the trial court did not explain the contents of the waiver of counsel form to him. We disagree. Benjamen told the court, under oath, that he had read and understood the form, and he had no questions. Thus, further discussion of the form was not necessary. Benjamen points to no evidence that indicates that he was incorrect when he told the court he understood the form. Furthermore, the court was not obligated to assume that Benjamen actually did not understand the waiver of counsel form and discuss it with him at length.

Finally, Benjamen argues that the court's procedure was "inadequate" because the court did not discuss standby counsel with him or appoint such counsel. Appellant's Br. p. 15. We disagree. He correctly notes that our Supreme Court has stated, "[A]ppointment of standby counsel is the recommended procedure to preserve [the] defendant's rights when he elects to represent himself." German v. State, 268 Ind. 67, 373 N.E.2d 880, 883 (1978). Furthermore, the United States Supreme Court has held that

16

a defendant's Sixth Amendment rights are not violated when a trial court appoints standby counsel, even over the defendant's objection, "to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." McKaskle v. Wiggins, 465 U.S. 168, 184, 104 S. Ct. 944, 79 L. Ed. 2d. 122 (1984). However, we have found no case, and Benjamen cites to none, that holds that a trial court violates a pro se defendant's rights under the Sixth Amendment by failing to sua sponte appoint standby counsel or by failing to discuss standby counsel with the defendant.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

RILEY, J., and CRONE, J., concur.