Robert WASHINGTON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0412–CR–1012.

Court of Appeals of Indiana.

Jan. 19, 2006.

Transfer Denied April 27, 2006.

Teresa D. Harper, Bloomington, for Appellant.

Steve Carter, Attorney General of Indiana, Robyn M. Williamson, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

ROBB, Judge.

Robert Washington was found guilty following a jury trial of conspiracy to commit kidnapping, burglary, and kidnapping, all as Class A felonies, and auto theft as a Class D felony. Washington now appeals his convictions. We affirm.

### Issues

Washington raises three issues for our review, which we restate as follows:

1. Whether the trial court properly excluded testimony from Washington's alibi witnesses;

2. Whether the trial court properly refused to allow Washington to cross-examine a witness after the witness had been asked a question by a juror; and

3. Whether the trial court properly refused to give one of Washington's proposed jury instructions.

### Facts and Procedural History

In the days prior to Sunday, September 15, 2002, Washington, his brother Dominic Washington ("Dominic"), his cousin Robert Camphor, and Kenneth Miller met and agreed to kidnap Katherine Justice and hold her for a $250,000 ransom. The plan originated with Camphor who wanted the money to help a relative obtain legal representation on a pending drug charge. Camphor knew Justice because he regularly sold drugs to her. He also knew that Justice's parents had money, and believed that they would have sufficient funds to pay the ransom.

On Sunday, September 15, 2002, Camphor had a friend rent a motel room at the Motel 6 located near 96th Street and Keystone Avenue in Indianapolis. In the early morning hours of Monday, September 16, 2002, Camphor drove Washington and Dominic to Justice's home. Sometime around 2:00 a.m., Justice returned home. Shortly thereafter, Washington and Dominic entered Justice's house wearing ski masks and jersey gloves. Justice heard Washington and Dominic making noise and went to investigate. As Justice approached her kitchen, Washington and Dominic apprehended her. At this point, Justice's dog started barking, and one of Justice's assailants sprayed the dog with pepper spray. Dominic and Washington then blindfolded Justice and tied her hands behind her back. They placed Justice in the back seat of her car and drove her to the motel room. At the motel, Justice's wrists and legs were duct-taped together and she was placed in the bathroom.

Later that morning, at 10:22 a.m., Miller called Justice's parents on a pre-paid cell phone. He spoke with Justice's mother, Sandra, and told her that Justice was being held for a $250,000 ransom. Sandra called her husband, Brady, and informed him of the situation. Brady promptly returned home from work and was present when Miller called again at 11:44 a.m. During this call, Brady told Miller that he could not obtain $250,000 in one day. Sometime later, Justice's brother, Michael, learned about what was happening. He contacted his friend Michael Snider, an Indiana State Police officer, and asked for

his help. Officer Snider had officers dispatched to the Justices' home and a trace was put on their phone line.

At 11:42 p.m., the Justices received a call from Miller. The police were able to trace the call to a pay phone located at a Clark gas station at 3845 North Keystone Avenue. Shortly before the call to the Justices was made, Indianapolis Police Officer Craig Wildauer observed two men near the pay phone at the Clark gas station who were driving a red Ford Escort. Moments later, Officer Wildauer learned through police dispatch that a call from Justice's kidnappers had just been made from the Clark gas station at 3845 North Keystone Avenue. Officer Wildauer turned his vehicle around and was able to catch up with and stop the red Ford Escort he had seen near the pay phone. Inside the vehicle were Camphor, Miller, and Washington.

Shortly thereafter, Indiana State Police Officer Todd McComas arrived on the scene and asked Washington to exit the vehicle. Officer McComas asked Washington if he could search him, and Washington consented. Officer McComas found a can of used pepper spray on Washington and a pair of brown jersey gloves. Washington was arrested and taken to an Indiana State Police post where his shoes were taken into evidence. The tread pattern on Washington's shoes was similar to prints found on the deck and door leading into Justice's home.

In searching the red Ford Escort that Camphor, Miller, and Washington had been driving, the police found a receipt for Motel 6. Using this receipt, the police were able to locate the room where Justice was being held. When police entered the room, they found Dominic guarding Justice. The State later charged Washington with conspiracy to commit kidnapping, burglary, and kidnapping, all as Class A

felonies. Washington was also charged with criminal confinement as a Class B felony and auto theft, a Class D felony. Camphor entered into a plea agreement with the State in which he pled guilty to conspiracy to commit kidnapping as a Class A felony. In exchange for his plea agreement, Camphor agreed to testify against Washington, Dominic, and Miller.

Washington, Dominic, and Miller were tried together. Their jury trial began on August 13, 2004. After the jury was selected, Washington filed a late notice of alibi defense, which listed Anthony McGinty and Latanya Ross as alibi witnesses. The trial court found that Washington had not shown good cause for his failure to timely file his notice of alibi defense and, pursuant to Indiana Code section 35–36–4–3(b), excluded the proposed evidence relating to Washington's alibi defense.

During trial, the State called Officer Wildauer to testify. Washington cross-examined Officer Wildauer, and then the trial court offered the jury the opportunity to ask Officer Wildauer questions. Washington's counsel raised no objections to the questions proposed by the jury. The trial judge then asked Officer Wildauer the following questions:

> Q Officer Wildauer, concerning Robert Washington, did you advise the individual in back of the stopped vehicle of his rights?
>
> A I did not do that. I did not have any contact with him in that area.
>
> Q Was this individual [Washington] aware, in your opinion, of what was going on at this time?
>
> A Yes.

Transcript at 370. After all of the jury's questions had been answered, Washington's counsel asked the trial judge if she could ask Officer Wildauer a question, but the trial judge refused. The next day,

Washington's counsel objected to the trial court's refusal to let her ask Officer Wildauer a question. She argued that this violated Washington's Sixth Amendment right to cross-examination and moved for a mistrial. The trial court denied Washington's motion for a mistrial.

Towards the end of the trial, Washington testified. He stated that he spent most of Sunday, September 15, 2002, at home. Washington related that at around 6:00 p.m. he met Camphor and borrowed one of his cars because Washington's car was being repaired. Washington then went to his sister's birthday party. After the party, he went to the home of his cousin Latanya Ross and his friend and co-worker Anthony McGinty where he spent the night. At 6:00 a.m. on the morning of Monday, September 16, 2002, Washington and McGinty drove to work together. After work, Washington drove McGinty home. Washington then returned to his house, got cleaned up, and went to see a visiting relative. Sometime during the evening, Washington got a call from Camphor in which Camphor explained that he needed his car back from Washington. Washington drove the car to Camphor's mother's house and met Camphor and Miller there. Camphor then agreed to give Washington a ride home. While taking Washington home, Camphor stopped at a gas station to make a call. After leaving the gas station, they were stopped by the police. Washington testified that he did not know why they were being stopped but assumed that it had something to do with Camphor's drug dealing.

The jury found Washington guilty on all counts. The trial court entered judgments of conviction for the charges of conspiracy to commit kidnapping, burglary, kidnapping, and auto theft, but not for the charge of criminal confinement because it found that charge merged with Washington's kidnapping conviction. This appeal ensued.

### Discussion and Decision
### I. Alibi Witnesses

Washington first argues that the trial court erred when it excluded testimony from his alibi witnesses, Latanya Ross and Anthony McGinty. We disagree.

#### A. Standard of Review

The determination of whether to admit or exclude evidence is entrusted to the trial court and will only be reversed for an abuse of discretion. *Farris v. State,* 818 N.E.2d 63, 67 (Ind.Ct.App.2004), *trans. denied.* "An abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it." *Id.*

#### B. The Sixth Amendment

On the first day of trial, Washington filed a late notice of alibi defense, which listed McGinty and Ross as alibi witnesses. The trial court asked Washington's counsel why the notice was filed late, and she responded as follows:

> Judge, my only defense on this is that Mr. Washington had multiple lawyers, as the Court is well aware. He was represented by the Public Defender's Office through Mr. Moore, then he was represented by Mr. Marchal, and then he was represented by Mr. Baker, Mr. Hugh Baker took some of the depositions and Mr. Patrick Baker took the remainder. Then I believe when Mr. Baker withdrew very briefly, Mr. Inman got the case, and then in April of 2004, I entered my appearance. I interviewed Mr. Washington at that time and I did not have—I was in between paralegals. I had lost my one of four years. I had typed up something for her to—handwritten something for her to file. It was not done. It is my recollection as an

officer of the court that I spoke with Mr. Baker, and that he stated that a notice of alibi had been filed. It was my fault not to check with the court. However, that's basically the extent of it.

Tr. at 12. In discussing the testimony McGinty and Ross might give, Washington's counsel stated, "But in terms of the other two witnesses, the narrow time period, technically he [Washington] could have committed what Mr. Camphor is alleging, which is the heart of the kidnapping, even with these witnesses testifying. So its [sic] technically not a complete alibi." *Id.* at 14. The trial court concluded that Washington had not shown good cause for his failure to timely file his notice of alibi defense, and excluded McGinty and Ross' alibi testimony.

■ Indiana Code section 35–36–4–1 provides that whenever a defendant in a criminal case who is charged with a felony intends to offer in his defense evidence of an alibi, he must file with the court and serve upon the prosecuting attorney no later than twenty days prior to the omnibus date a written statement of his intention to offer such a defense. If the defendant fails to timely file his notice of alibi defense and does not show good cause for this failure, then "the court *shall* exclude evidence offered by the defendant to establish an alibi." Ind.Code § 35–36–4–3(b) (emphasis added). The determination of whether a defendant has established good cause is left to the discretion of the trial court. *Seay v. State*, 529 N.E.2d 106, 110 (Ind.1988).

■ Here, it is undisputed that Washington did not file his notice of alibi defense twenty days prior to the omnibus date. His counsel explained that the notice was filed late because Washington had multiple attorneys and because there had been a mix up in her office. The trial court concluded that this explanation did not

constitute good cause for the tardy filing of the notice. We cannot say that this conclusion was an abuse of discretion. Therefore, the trial court properly excluded McGinty's and Ross' alibi testimony pursuant to Indiana Code section 35–36–4–3(b).

■ However, Washington argues that the trial court violated his rights under the Compulsory Process Clause of the Sixth Amendment when it excluded McGinty's and Ross' alibi testimony. Initially, we note that Washington did not raise this argument before the trial court. We have previously stated that "a party may not present an argument or issue to an appellate court unless the party raised the same argument or issue before the trial court." *Crafton v. State*, 821 N.E.2d 907, 912 (Ind. Ct.App.2005). Therefore, Washington has waived this issue.

■ Waiver notwithstanding, the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor ...." We have stated that the Sixth Amendment guarantees a criminal defendant the right to present witnesses on his behalf. *Kroegher v. State*, 774 N.E.2d 1029, 1032 (Ind. Ct.App.2002), *trans. denied.* Although the right to present witnesses is of critical importance, it is not absolute and must sometimes yield to other legitimate interests in the criminal trial process. *Id.* at 1033.

The issue presented here is whether the exclusion of a third party witness' alibi testimony because the defendant failed to file a timely notice of alibi defense violates the defendant's Sixth Amendment rights. This appears to be an issue of first impression in this state. Although our supreme court has not addressed the issue presented here, it has considered a similar issue in

*Baxter v. State,* 522 N.E.2d 362 (Ind.1988). The court's analysis in *Baxter* is instructive here.

In *Baxter,* our supreme court considered whether the exclusion of a defendant's own alibi testimony because he did not file a timely notice of alibi defense violated the defendant's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. The court began by noting that a state may not deny a criminal defendant the right to a fair opportunity to defend against the state's accusations, but the right to present evidence is not absolute and may bow to accommodate other legitimate interests in the criminal trial process. *Id.* at 368. The court listed several legitimate state objectives furthered by alibi statutes like Indiana Code section 35–36–4–3(b). For instance, the court stated:

> First and foremost, by requiring the accused to reveal his alibi defense in advance, the element of surprise is greatly reduced and the fairness of the adversary system thereby enhanced. Second, the likelihood of government investigation following advance notice discourages defendants from fabricating alibis, a deterrent that is lost when alibis can be introduced without warning during the trial. Finally, notice rules promote the orderly administration of justice by preventing unnecessary continuances and by eliminating trials in those instances where post-notice investigation reveals an alibi's merits.

*Id.* at 369 (quoting *Alicea v. Gagnon,* 675 F.2d 913, 916–17 (7th Cir.1982)). The court said, "The purpose of the Indiana alibi statute is not to compel the exclusion of evidence or mandate retrials for purely technical errors. The sanction for noncompliance by the defendant is designed to protect the State from fabrication of defenses and enable prosecutors to prepare adequately for trial." *Id.* (citations omitted). The court noted,

> Determining whether the defendant's right to testify must overcome the State's interests is necessarily fact sensitive. The trial court should, of course, consider the acts of the accused and defense counsel which produced the procedurally inadequate alibi. The effects of allowing the alibi evidence is pertinent, because the objective of the alibi statute is prevention of fabrication and surprise, not punishment of the accused for technical errors. Where the defendant or defense counsel files a tardy or inadequate notice of alibi simply because neither has aggressively pursued that defense and their failure does not deprive the State of sufficient time and information to investigate and respond, the Constitution would seem to require the allowance of at least the defendant's testimony. However, where the defendant purposely suppresses alibi evidence to gain some advantage in the prosecution, preclusion of his testimony may be appropriate.

*Id.* Although the court determined that a defendant's rights under the Fifth, Sixth, and Fourteenth Amendments could be violated when a trial court excluded his own alibi testimony because he did not file a timely notice of alibi defense, the court held that in that case the trial court properly excluded Baxter's alibi testimony because Baxter "failed to establish that his right to testify outweighed the legitimate interests protected by the alibi notice requirement." *Id.* at 369–70.

The analysis used by our supreme court in *Baxter* is similar to the analysis developed by the United States Supreme Court in *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Washington argues that the analysis employed by the Supreme Court in *Taylor* is applica-

ble here. In *Taylor*, Taylor was arrested and charged with attempted murder. Prior to trial, the prosecutor filed a discovery motion requesting a list of defense witnesses. Taylor's counsel filed a response to this motion and amended that response on the first day of trial. In neither instance did Taylor's counsel identify Alfred Wormley as a potential witness. On the second day of trial, Taylor moved to amend his response to the prosecutor's discovery motion by adding Wormley as a witness. Taylor's counsel alleged that Wormley had probably seen the entire incident in question. The trial court inquired as to why Wormley had not been identified earlier, and Taylor's counsel responded that it was because he had been unable to locate Wormley. The trial court expressed its concern about the possibility that " 'witnesses are being found that really weren't there.' " *Id.* at 404, 108 S.Ct. 646. The next day, Wormley appeared and an offer of proof regarding the nature of what his testimony would be was made. Wormley testified that he was not present at the incident in question, but that he had seen the victim earlier in the day carrying two guns in a blanket. After hearing Wormley testify, the trial court concluded that Taylor had willfully and blatantly committed a discovery violation and that the proper sanction was to exclude Wormley's testimony. Taylor was convicted of attempted murder and the Illinois Appellate Court affirmed.

The issue before the Supreme Court was whether the exclusion of Wormley's testimony violated Taylor's rights under the compulsory process clause of the Sixth Amendment. Taylor argued that "the Sixth Amendment bars a court from ever ordering the preclusion of defense evidence as a sanction for violating a discovery rule." *Id.* at 406, 108 S.Ct. 646. The Court disagreed. It first noted that it was "reasonable to presume that there is some-

thing suspect about a defense witness who is not identified until after the 11th hour has passed." *Id.* at 414, 108 S.Ct. 646. The Court then stated,

> In order to reject petitioner's argument that preclusion is never a permissible sanction for a discovery violation it is neither necessary nor appropriate for us to attempt to draft a comprehensive set of standards to guide the exercise of discretion in every possible case. It is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.
>
> A trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial. If that explanation reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony.

*Id.* at 414–15, 108 S.Ct. 646 (footnote omitted). The Court ultimately held that the exclusion of Wormley's testimony did not violate Taylor's constitutional rights because there was evidence that Taylor's counsel had engaged in willful misconduct

in order to obtain a tactical advantage. *Id.* at 417–18, 108 S.Ct. 646.

Arguably, *Taylor* is distinguishable because the witness excluded in that case was not an alibi witness. However, several Federal Circuit Courts of Appeal have applied the analysis developed by the Supreme Court in *Taylor* in addressing claims that a defendant's rights under the Compulsory Process Clause of the Sixth Amendment were violated when a third-party witness' alibi testimony was excluded because the defendant did not file a timely notice of alibi defense. *See Wade v. Herbert*, 391 F.3d 135, 141 (2nd Cir.2004); *Watley v. Williams*, 218 F.3d 1156, 1159 (10th Cir.2000), *cert. denied*, 531 U.S. 1089, 121 S.Ct. 809, 148 L.Ed.2d 695 (2001); *Anderson v. Groose*, 106 F.3d 242, 246 (8th Cir.1997), *cert. denied*, 521 U.S. 1108, 117 S.Ct. 2488, 138 L.Ed.2d 996 (1997); *Bowling v. Vose*, 3 F.3d 559, 561 (1st Cir.1993), *cert. denied*, 510 U.S. 1185, 114 S.Ct. 1236, 127 L.Ed.2d 580 (1994); *United States v. Johnson*, 970 F.2d 907, 910 (D.C.Cir.1992); *Eckert v. Tansy*, 936 F.2d 444, 446 (9th Cir.1991); *Escalera v. Coombe*, 852 F.2d 45, 47 (2nd Cir.1988). Therefore, we believe that the *Taylor* analysis is applicable here. Additionally, we believe that our supreme court's analysis in *Baxter* is in line with the analysis in *Taylor* and is instructive in this instance.

▮▮ Both *Taylor* and *Baxter* indicate that in determining whether the trial court properly excluded McGinty's and Ross' alibi testimony, we must balance Washington's right to present witnesses on his behalf against the State and the public's interest in maintaining the integrity of the adversary process. *Taylor* and *Baxter* hold that when a defendant willfully or purposely suppresses alibi evidence to gain a tactical advantage, the trial court can properly exclude the proffered alibi testimony without violating the defendant's

Sixth Amendment rights. Here, Washington's counsel explained that the reason his notice of alibi defense was filed late was because Washington had multiple attorneys and because there was a mix up at her office. Washington's belated filing of his notice of alibi defense appears to be the product of negligence rather than willful or purposeful misconduct. This would suggest that the trial court erred in excluding McGinty's and Ross' alibi testimony.

Certainly though, as the Supreme Court suggests in *Taylor*, the fact that Washington did not reveal McGinty and Ross to the State until the last possible moment makes it reasonable to suspect that there was something suspect about their testimony. By keeping the State in the dark about his alibi defense, the State could not investigate that defense, and, thus, Washington was in no way deterred from fabricating an alibi. In filing his notice of alibi on the first day of trial, Washington prejudiced the State by not giving it sufficient time and information to adequately prepare for trial. Each of these factors impairs the truth-determining function of the adversary process.

Although the State was prejudiced by Washington's belated notice of alibi defense, this prejudice was not severe. Washington's counsel admitted that McGinty's and Ross' testimony was not a complete alibi. She stated that even with McGinty's and Ross' testimony, it was still possible for Washington to have committed the kidnapping of Justice. A skilled prosecutor could have revealed the weakness of McGinty's and Ross' alibi testimony. While this is a close case, Washington's right to present witnesses on his behalf slightly outweighs the State and public's interest in maintaining the integrity of the adversary process. Therefore, the trial court violated Washington's rights under the Compulsory Process Clause of the

Sixth Amendment when it excluded McGinty's and Ross' alibi testimony.

However, "trial court error, even of constitutional dimension, does not necessarily require reversal of a conviction." *Bush v. State*, 775 N.E.2d 309, 311 (Ind.2002). An error in the exclusion of evidence is harmless if its probable impact on the jury, in light of all the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights. *Williams v. State*, 714 N.E.2d 644, 652 (Ind.1999), *cert. denied*, 528 U.S. 1170, 120 S.Ct. 1195, 145 L.Ed.2d 1099 (2000). Here, we first note that Washington never argued to the trial court that the exclusion of McGinty's and Ross' alibi testimony violated his Sixth Amendment rights. It is also significant that Washington's notice of alibi defense was late under Indiana Code section 35–36–4–1, that Washington failed to show good cause for why his notice of alibi was late, and, because of this, the trial court was required under Indiana Code section 35–36–4–3(b) to exclude McGinty's and Ross' alibi testimony. Although the trial court barred McGinty and Ross from testifying, Washington was allowed to testify to an alibi. The value of McGinty's and Ross' alibi testimony is questionable at best. Washington's counsel stated that their testimony was not a complete alibi, and that even with their testimony it was still possible for Washington to have kidnapped Justice.

Even with McGinty's and Ross' testimony, Washington could still have been convicted of conspiracy to commit kidnapping under Indiana Code section 35–41–5–2. "A person conspires to commit a felony when, with the intent to commit the felony, he agrees with another person to commit the felony." Ind.Code § 35–41–5–2(a). To sustain a conviction for conspiracy, the State must prove that either the defendant or the person with whom he agreed performed an overt act in furtherance of the agreement. Ind.Code § 35–41–5–2(b). Camphor testified that prior to Sunday, September 15, 2002, he met with Washington, Miller, and Dominic. During this meeting, they agreed to kidnap Justice and hold her for ransom. On Monday, September 16, 2002, Camphor, Miller, and Dominic performed overt acts in furtherance of this agreement.

Additionally, the State presented significant evidence linking Washington to Justice's kidnapping. Camphor testified that when Washington entered Justice's home he was wearing jersey gloves, and Justice testified that one of her kidnappers sprayed her dog with pepper spray when it started barking. When Washington was arrested, a pair of jersey gloves and a can of used pepper spray were found on his person. There was also evidence that the tread on Washington's shoes was similar to a print found on Justice's deck and door. Therefore, the trial court's exclusion of McGinty's and Ross' alibi testimony was harmless error and does not require reversal of Washington's convictions.

### C. Article 1, Section 13

Washington also argues that the trial court's exclusion of McGinty's and Ross' alibi testimony violated his rights under Article 1, Section 13 of the Indiana Constitution. Like his Sixth Amendment argument, Washington did not raise this issue before the trial court. A party cannot raise an argument or issue at the appellate level if they have not raised the same argument or issue before the trial court. *Crafton*, 821 N.E.2d at 912. Therefore, Washington has waived this issue.

Waiver notwithstanding, Article 1, Section 13 provides that in all criminal prosecutions the accused shall have the right to compulsory process for obtaining witnesses in his favor. Although our supreme

court held in *Campbell v. State*, 622 N.E.2d 495, 499 (Ind.1993), that the exclusion of a defendant's own alibi testimony because of his failure to file a timely notice of alibi violated the defendant's rights under Article 1, Section 13, no Indiana court has yet addressed the specific question of whether the exclusion of a third-party witness' alibi testimony for the defendant's failure to file a timely notice of alibi defense would violate the defendant's rights under Article 1, Section 13. Nevertheless, in situations similar to the one presented here, where a witness has been belatedly disclosed, our supreme court has stated that "[t]rial courts have the discretion to exclude a belatedly disclosed witness when there is evidence of bad faith on the part of counsel or a showing of substantial prejudice to the State." *Williams*, 714 N.E.2d at 651. We believe that this standard is sufficient to protect a defendant's rights under Article 1, Section 13, and apply it here.

We have already determined that Washington's belated disclosure of McGinty's and Ross' alibi testimony was, at most, negligent and not done willfully or in bad faith. The State was prejudiced by Washington's late notice of alibi defense in that it was denied sufficient time and information to prepare for such a defense. However, the prejudice to the State was not severe. Washington's counsel admitted that McGinty's and Ross' testimony was not a complete defense. A skilled prosecutor, even though given little time to prepare, could have revealed the weaknesses in McGinty's and Ross' alibi testimony. Therefore, the trial court's exclusion of McGinty's and Ross' alibi testimony violated Washington's rights under Article 1, Section 13.

However, the trial court's exclusion of McGinty's and Ross' alibi testimony was harmless error. An error in the exclusion of evidence is harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights. *Id.* at 652. Washington's notice of alibi defense was filed late, and he failed to show good cause for this. Under Indiana Code section 35–36–4–3(b), the trial court was required to exclude McGinty's and Ross' alibi testimony. Pursuant to *Campbell*, the trial court allowed Washington to testify to an alibi. The value of McGinty's and Ross' alibi testimony is questionable considering Washington's counsel's admission that even with their testimony it was possible Washington could still have kidnapped Justice. Even if the trial court had allowed McGinty and Ross to testify, Washington could still have been convicted of conspiracy to commit kidnapping based on Camphor's testimony that Washington agreed with Camphor, Miller, and Dominic to kidnap Justice. Additionally, the State presented significant evidence linking Washington to the kidnapping. When Washington was arrested a pair of jersey gloves and a can of used pepper spray were found on his person. The State also introduced evidence that the tread on Washington's shoe was similar to a print found on Justice's deck and door. The trial court's exclusion of McGinty's and Ross' alibi testimony was harmless error because the probable impact of this evidence on the jury, in light of all the evidence in the case, was sufficiently minor so as not to affect Washington's substantial rights. Reversal of Washington's convictions is not warranted on this basis.

### D. Abuse of Discretion

 Washington next argues that even if the trial court's exclusion of McGinty's and Ross' alibi testimony did not violate the Sixth Amendment or Article 1, Section 13, it still was an abuse of discretion. "An

abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it." *Farris*, 818 N.E.2d at 67.

The trial court's exclusion of McGinty's and Ross' alibi testimony was not an abuse of discretion. Pursuant to Indiana Code section 35–36–4–3(b), the trial court was required to exclude their testimony because Washington failed to show good cause for his belated filing of his notice of alibi defense. Washington never argued to the trial court that the exclusion of McGinty's and Ross' testimony violated his rights under the Sixth Amendment and Article 1, Section 13, so the trial court never had the opportunity to address this concern. The trial court, pursuant to *Campbell*, properly allowed Washington to offer his own alibi testimony. The impact McGinty's and Ross' alibi testimony might have had on the jury is questionable considering Washington's counsel's statement that their testimony was not a complete alibi. And, as we have already stated, the State presented significant evidence linking Washington to the kidnapping, and even with McGinty's and Ross' testimony, Washington could still have been convicted of conspiracy to commit kidnapping. Therefore, the trial court did not err in excluding McGinty's and Ross' alibi testimony.

## II. Denial of Cross–Examination

Washington next contends that the trial court erred when it refused to allow him to cross-examine Officer Wildauer after the jury had asked the officer a question. Washington first argues that the trial court abused its discretion in asking the juror's question. The question at issue here is as follows: "Was the individual [Washington] aware, in your opinion, of what was going on at this time?" Tr. at 370. Officer Wildauer responded, "Yes."

*Id.* The trial court allowed Washington's counsel to look at this question before it was asked. Washington's counsel raised no objection to the question. Later, when Washington did raise an objection, the nature of that objection centered on the trial court's refusal to allow Washington to cross-examine Officer Wildauer and did not assert that the trial court abused its discretion in asking the question. "As a general rule, failure to object at trial results in waiver of an issue for purposes of appeal." *Herron v. State*, 801 N.E.2d 761, 765 (Ind.Ct.App.2004). By failing to object to the question, Washington has waived this issue.

Washington next argues that the trial court abused its discretion and violated his rights under the Confrontation Clause of the Sixth Amendment when, after it had finished asking Officer Wildauer the questions posed by the jury, it refused to allow him to cross-examine the officer. The right to cross-examine witnesses is guaranteed by the Sixth Amendment to the United States Constitution and is one of the fundamental rights of our criminal justice system. *Nelson v. State*, 792 N.E.2d 588, 594 (Ind.Ct.App.2003), *trans. denied.* "However, this right is subject to reasonable limitations imposed at the discretion of the trial judge." *Logan v. State*, 729 N.E.2d 125, 134 (Ind.2000). Trial judges retain wide latitude to impose reasonable limits on the right to cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. *Nelson*, 792 N.E.2d at 594. We will find an abuse of discretion when the trial court controls the scope of cross-examination to the extent that a restriction substantially affects the defendant's rights. *Williams v. State*, 779 N.E.2d 610, 612 (Ind.Ct.App.2002) (quoting

*Zawacki v. State*, 753 N.E.2d 100, 102 (Ind.Ct.App.2001), *trans. denied* ).

Here, after the State finished its direct examination, Washington extensively cross-examined Officer Wildauer. At one point during cross-examination, Officer Wildauer admitted, "I did not get him [Washington] out of the car, ma'am, your client, and search him or pat him down at all." Tr. at 359. Later the following exchange took place:

Q Do you recall telling—being questioned [at a deposition] by Mr. Baker, Mr. Washington's prior attorney, "Officer, what dealings did you have with Robert Washington?" Answer, "Very limited." "Did you question him?" "I don't believe so." "Did you search him?" "I don't believe so." Question, "Did you find any evidence or know of any evidence through your specific observations that would link him to the alleged crime?" "Not that I know of." So once again you said you didn't believe so, that is correct, is it not?

A That sounds like an accurate reading of the deposition.

*Id.* at 362–63. After being asked by the jury whether he had advised Washington of his rights, Officer Wildauer stated, "I did not have contact with him [Washington] in that area." *Id.* at 370. During her objection, Washington's counsel said,

My question to Officer Wildauer would have been, and I'd proffer this for the record, that Officer Wildauer, based on what you just answered to the juror's questions, you did not see Robert Washington, you saw three individuals in the car but you had no conversation with Robert Washington, that you did not, based on my cross-exam, he left it that he did not believe he had searched Robert Washington. In fact, his contact with Robert Washington was nominal, if

non-existent according to his previous testimony, that he did not get him out of the car.

*Id.* at 414. Washington's purpose in attempting to ask Officer Wildauer a question after the jury questions appears to have been to again highlight that his contact with Washington was nominal, and, therefore, he would not have known whether Washington was aware of what was going on at that time. Washington's earlier cross-examination, though, made it clear to the jury that Officer Wildauer's contact with Washington was limited. Thus, further questioning on this topic would have been repetitive and was unnecessary.

Furthermore, contrary to Washington's assertion, the juror question at issue did not directly implicate the *mens rea* element of the crimes Washington was charged with. The question was ambiguous. It merely asked Officer Wildauer whether, in his opinion, Washington was aware of what was going on at that time. The question did not ask whether Washington was aware that Justice had been kidnapped. Many different things were going on at that time. The question could be referring to any of these events. Therefore, the trial court did not abuse its discretion or violate Washington's rights under the Confrontation Clause of the Sixth Amendment when it refused to allow Washington to cross-examine Officer Wildauer after the jury had asked him a series of questions.

 Even if the trial court's refusal to allow Washington to cross-examine Officer Wildauer violated Washington's Sixth Amendment rights, this error was harmless. Violations of the right to cross-examination are subject to harmless error analysis. *Nelson,* 792 N.E.2d at 594. In determining whether such an error is harmless we consider several fac-

tors: (1) the strength of the prosecution's case; (2) the importance of the witness' testimony; (3) whether the testimony was corroborated; (4) the cross-examination that did occur; and (5) whether the witness' testimony was repetitive. *Id.* Here, Officer Wildauer admitted that his contact with Washington was nominal. His testimony regarding Washington then was of limited importance. The record also reveals that Washington extensively cross-examined Officer Wildauer prior to the officer being asked questions by the jury. Therefore, reversal of Washington's convictions on this issue is not warranted.

### III. Jury Instruction

■■■ At the conclusion of the trial, Washington proffered the following jury instruction:

> You have heard testimony that Robert Camphor has received benefits from the State of Indiana in connection with this case.

> You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

Appellant's Appendix at 130. The trial court refused to give this instruction, and instead instructed the jury as follows:

> You are the exclusive judges of the evidence, which may be either witness testimony or exhibits. In considering the evidence, it is your duty to decide the value you give to the exhibits you receive and the testimony you hear.

> In determining the significance of a witness's testimony, some factors you may consider are:

> - The witness's ability and opportunity to observe

> - The behavior of the witness while testifying

> - Any interest, bias or prejudice the witness may have

> - Any relationship with people involved in the case

> - The reasonableness of the testimony considering the other evidence

> - Your knowledge, common sense, and life experiences.

> You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony, you must determine which of the witnesses you will believe and which of them you will disbelieve.

> The quantity of evidence or the number of witnesses need not control your determination of the truth. You should give the greatest value to the evidence you find most convincing.

*Id.* at 143.

■■■ Washington now argues that the trial court erred when it refused to give his proffered jury instruction. "Instruction of the jury is within the discretion of the trial court and is reviewed only for an abuse of discretion." *Randolph v. State*, 802 N.E.2d 1008, 1011 (Ind.Ct.App. 2004), *trans. denied.* When reviewing the propriety of the trial court's decision to refuse a tendered jury instruction, we consider the following factors: (1) whether the instruction was supported by evidence in the record; (2) whether the instruction correctly states the law; and (3) whether other instructions adequately cover the substance of the denied instruction. *Flake v. State*, 767 N.E.2d 1004, 1007 (Ind.Ct. App.2002). "A defendant is only entitled to a reversal if he affirmatively demonstrates that the instructional error prejudiced his substantial rights." *Hero v. State*, 765 N.E.2d 599, 602 (Ind.Ct.App. 2002), *trans. denied.*

Washington's proffered jury instruction concerns the reliability of an accomplice's testimony. Washington concedes that our supreme court has repeatedly disapproved of such instructions because they impinge upon the jury's decision-making ability. *See Sherwood v. State,* 702 N.E.2d 694, 698 (Ind.1998); *Tidwell v. State,* 644 N.E.2d 557, 559–60 (Ind.1994); *Turner v. State,* 258 Ind. 267, 272, 280 N.E.2d 621, 624 (1972). Nevertheless, Washington asks us to revisit this issue and conclude that such instructions are permissible. We refuse to do this. Therefore, the trial court properly refused to give Washington's proffered jury instruction.

■ Additionally, the jury instruction given by the trial court adequately covered the substance of the instruction proffered by Washington. The trial court instructed the jury that in determining the significance to give to a witness' testimony, the jury should consider any interest, bias, or prejudice the witness may have. The jury had sufficient instruction and information to assess the credibility of the witnesses. The trial court did not abuse its discretion when it refused to give Washington's proffered jury instruction.

### Conclusion

Washington waived his claims that the trial court violated his rights under the Sixth Amendment and Article 1, Section 13, when it excluded his alibi witnesses from testifying. Waiver notwithstanding, the trial court's exclusion of Washington's alibi witnesses violated Washington's rights under the Sixth Amendment and Article 1, Section 13, but both of these errors were harmless. The trial court did not violate Washington's rights under the Confrontation Clause of the Sixth Amendment when it refused to allow him to cross-examine a witness after the witness had been asked questions by the jury be-

cause Washington had been given a prior opportunity to cross-examine that witness and further questioning would have been repetitive. We also hold that the trial court properly refused to give Washington's proffered jury instruction. Washington's convictions are therefore affirmed.

Affirmed.

MAY, J., concurs.

KIRSCH, C.J., concurs in result with opinion.

KIRSCH, Chief Judge, concurring in result.

I fully concur with the majority's holdings that the trial court did not commit error in limiting the cross-examination of Officer Wildauer or in refusing Washington's tendered jury instruction and in its conclusion that Washington's convictions should be affirmed, but I believe the trial court was within its discretion in excluding the alibi testimony. Accordingly, I concur in result.

My colleagues look to the decisions of our Supreme Court in *Baxter v. State,* 522 N.E.2d 362 (Ind.1988) and the United States Supreme Court in *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) which held that the exclusion of evidence in criminal case for discovery violations was not error where the violations constituted willful misconduct. From these holdings they reason that since the discovery violation here was the result of oversight and not willful misconduct, the trial court erred in excluding the testimony. I do not think that either *Baxter* or *Taylor* should be so limited.

In *Baxter,* our Supreme Court noted that the determination "is necessarily fact sensitive." 522 N.E.2d at 369. While preclusion of alibi testimony "may be appropriate" where the defendant has purposely suppressed the evidence, it may not be

appropriate where the alibi notice is simply tardy or inadequate and "their failure does not deprive the State of sufficient time and information to investigate and respond." *Id.* The Court observed that the determination of "whether the defendant's right to testify must overcome the State's interests is necessarily fact sensitive." *Id.*

In *Taylor,* the United State Supreme Court noted that "it is neither necessary nor appropriate for us to attempt to draft a comprehensive set of standards to guide the exercise of discretion in every possible case." 484 U.S. at 414, 108 S.Ct. 646. The Court continued, saying that the fundamental character of the defendant's right to offer testimony must be weighed against the integrity of the adversary process, the interest of fair and efficient administration of justice and the potential prejudice to the State.

My reading of *Baxter* and *Taylor* leads me to believe that the courts were setting out guidelines by which the trial court was to exercise its discretion in making the determination of whether to exclude alibi and other defense evidence for discovery violations and important factors which must be weighed in that determination and that while it may be appropriate to exclude evidence for willful violations, the fact that the violations derive not from willfulness but oversight or inattention does not end the inquiry. Whether the discovery violation at issue is due to oversight or a willful desire to gain an advantage, the harm to the State is the same, and that harm must be factored into the decision to exclude or allow the evidence. Here, I believe the trial court properly balanced the competing interests and was within its discretion in excluding the testimony.