## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 31 2019, 6:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark C. Marshall, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 31, 2019 <br><br> Court of Appeals Case No. 19A-CR-760 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Steven P. Meyer, Judge <br><br> Trial Court Cause No. 79D02-1710-F5-141 |

**Mathias, Judge.**

[1]     Mark C. Marshall ("Marshall") was convicted in Tippecanoe Superior Court of Level 5 felony domestic battery, Level 6 felony strangulation, and Level 6

felony criminal confinement. Marshall was also adjudicated an habitual offender. Marshall appeals his convictions and raises two issues on appeal, which we reorder and restate as:

I. Whether the trial court abused its discretion when it excluded Marshall's alibi evidence; and,

II. Whether the trial court erred when it attached the habitual offender sentencing enhancement to Marshall's Level 5 felony domestic battery conviction.

[2] Concluding that the trial court acted within its discretion when it excluded evidence of Marshall's alibi but erred when it attached the habitual offender sentence enhancement to the domestic battery sentence, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## Facts and Procedural History

[3] Marshall and A.H. were involved in a romantic relationship, and they have a child together, L.M., who was born in September 2014. On January 5, 2016, Marshall pleaded guilty to battering A.H.

[4] On September 1, 2016, A.H. and Marshall were no longer involved in a romantic relationship. A.H. was outside her home with L.M., who was almost two years old. Marshall arrived at A.H.'s home at approximately 3:15 p.m. A.H. told Marshall to leave, but Marshall refused. He dared A.H. to run, and when she did, Marshall chased her.

[5] Marshall caught A.H. as she reached her front porch. A.H., who was carrying L.M., attempted to hang onto the porch swing. Marshall grabbed her by the throat and choked her as he dragged A.H. and L.M. into the house. A.H.'s momentum caused her to fall to the floor.

[6] Marshall shut the front door and locked it. He knelt and placed his knees on A.H.'s chest. He pinned her arms with his hands. He then put his hands around A.H.'s throat and choked her again. A.H. could not breathe and nearly lost consciousness. Marshall temporarily loosened his grip, allowed A.H. to gasp for air, and resumed applying pressure to her throat. Marshall punched A.H. in the head twice and demanded that she replace his lost clothing.

[7] L.M. stood near her mother's head and cried. Marshall screamed at the child and told her to go to her room. Marshall rose from the floor and grabbed A.H.'s purse and cell phone. Marshall did not want A.H. to use her phone to call the police.

[8] Marshall allowed A.H. to sit on the couch and hold L.M. on her lap after L.M. returned to the living room. A.H. calmed Marshall down. She told him she would replace his clothes. She promised he could be a part of their family again. Marshall made A.H. swear she would not call the police. Marshall then left A.H.'s house.

[9] A.H. and L.M. went to A.H.'s parents' house, and A.H. called the police. Police Department Officer William Dorsey ("Officer Dorsey") responded to the 911 call. He interviewed A.H. and took photographs of her injuries. A.H.'s

throat was red and swollen. She had scratches on her throat and rug burns on her back. A.H. told the officer that Marshall had attacked her and gave the officer Marshall's phone number.

[10] Officer Dorsey called Marshall and asked to speak to him about an incident involving A.H. Marshall refused to speak to the officer about A.H. and stated that he was at work. The officer asked to meet with Marshall, but Marshall did not want the officer at his place of employment. The officer then asked Marshall where he was at approximately 3:00 p.m. Marshall replied that he was at IU Hospital in Lafayette visiting his terminally ill brother. He told the officer that he left the hospital through Entrance 4 around 3:30 or 3:45 to go to work.

[11] Officer Dorsey proceeded to the hospital. He spoke to the security officers on duty, and they allowed Officer Dorsey to watch the security tape for Entrance 4. Officer Dorsey watched footage of people entering and exiting Entrance 4 between 3:00 p.m. and 4:00 p.m. on September 1, 2016. The officer did not observe anyone remotely matching Marshall's description use the hospital entrance.

[12] On October 25, 2017, the State charged Marshall with Level 5 felony domestic battery, Level 6 felony domestic battery, Level 6 felony strangulation, Level 6 felony criminal confinement, and Class A misdemeanor domestic battery. The State also alleged that Marshall was an habitual offender. Marshall filed a notice of alibi on May 30, 2018, well after the December 7, 2017 omnibus date. The State filed a motion to exclude the alibi defense, which the trial court

granted. However, the trial court informed Marshall that he could testify in his own defense.

[13] A few weeks before his January 8, 2019 jury trial commenced, Marshall filed an amended notice of alibi. The trial court again granted the State's motion to exclude Marshall's alibi defense except that Marshall would be allowed testify in his own defense. During trial, Marshall made an offer to prove and presented Teresa Robinson's ("Robinson") testimony that she visited Marshall's terminally ill brother every day and Marshall was living in his brother's hospital room. Robinson could not recall the specific dates and times that she visited the hospital or whether she saw Marshall at the hospital on September 1, 2016. Therefore, Marshall withdrew Robinson's proposed testimony. Tr. Vol. II, p. 204. On the second day of trial, Marshall attempted to admit a letter purportedly written by a doctor at the hospital stating that Marshall stayed at his brother's bedside during his brother's hospital stay from August 22 to September 29, 2016. The State objected to the letter, and the trial court sustained the objection.

[14] In a bifurcated proceeding, the jury found Marshall guilty of Level 6 felony domestic battery, Level 6 felony strangulation, Level 6 felony criminal confinement, and Class A misdemeanor domestic battery. Marshall waived his right to a jury trial on the Level 5 felony domestic battery charge and the habitual offender allegation. After a bench trial, the trial court found that Marshall was guilty of Level 5 felony domestic battery because he had a

previous Level 6 felony domestic battery conviction and also found that Marshall was an habitual offender.

[15]    Marshall's sentencing hearing was held on April 2, 2019. The trial court merged the guilty findings on all three domestic battery charges and entered a judgment of conviction only on Level 5 felony domestic battery. Marshall was ordered to serve five years for the domestic battery conviction concurrent with the two-year sentences he received for the Level 6 felony criminal confinement and strangulation convictions. The trial court enhanced Marshall's sentence on the Level 5 felony by six years due to the habitual offender finding, resulting in an aggregate sentence of eleven years in the Department of Correction. The trial court ordered the last two years of the sentence to be served in Community Corrections. Marshall now appeals his convictions and sentence.

## Alibi Defense

[16]    Marshall argues that the trial court abused its discretion when it granted the State's motion to exclude his alibi defense and excluded testimony from Teresa Robinson, his alibi witness. The trial court has broad discretion in ruling on the admissibility of evidence. *Edwards v. State*, 930 N.E.2d 48, 49 (Ind. Ct. App. 2010), *trans. denied*. We will reverse such a ruling only when the trial court abuses its discretion. *Id.* at 50. An abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it. *Washington v. State*, 840 N.E.2d 873, 879 (Ind. Ct. App. 2006), *trans. denied*.

[17] Indiana Code section 35-36-4-1 requires that when a defendant who is charged with a felony intends to offer in his defense evidence of an alibi, he must file with the court and serve upon the prosecutor, no later than twenty days prior to the omnibus date, a written statement of his intention to offer such a defense. A defendant who does not timely file the notice of alibi defense may show good cause for not doing so. If the defendant fails to show good cause, the trial court "shall exclude evidence offered by the defendant to establish an alibi." Ind. Code § 35-36-4-3(b); *see also Washington*, 840 N.E.2d at 879.

[18] Marshall argues that the delay in filing his notices of alibi defense was due to attorney neglect. In *Washington*, the defendant argued that he had good cause for failing to file his notice of alibi prior to the omnibus date because he had multiple attorneys, and trial counsel had been told by prior counsel that the notice of alibi had been filed. Trial counsel admitted fault for failing to check the court file. The trial court concluded that counsel's negligence was not good cause for the tardy filing. Our court concluded that the trial court acted within its discretion when it determined that Washington failed to establish good cause. *Id.* at 880.

[19] In this case, Marshall filed his notice of alibi defense on May 30, 2018, over five months after the omnibus date.[1] Marshall claimed that he was visiting his

---

[1] In his brief, citing Indiana Code section 35-36-8-1, Marshall argues that the omnibus date should have been reset when his first attorney withdrew due to a conflict of interest. Although Marshall appears to be correct in this regard, he did not raise this argument in the trial court. Therefore, he has waived it for appeal. *See Pigg v. State*, 929 N.E.2d 799, 803 (Ind. Ct. App. 2010), *trans. denied*.

brother at IU Arnett Hospital in Lafayette, Indiana on September 1, 2016. Marshall stated that he left the hospital sometime between 3:30 p.m. and 3:45 p.m. to go to work.[2] Appellant's App. p. 73. Marshall claimed that he was either with his brother or at work on the date and time that A.H. was attacked. Marshall acknowledged the tardiness of his filing but argued good cause because his first attorney withdrew due to a conflict of interest, and his new counsel was not made aware of the alibi defense until April 13, 2018. *Id.* at 74.

[20] Eighteen days before his trial began, Marshall filed an amended notice of alibi defense. In that notice, Marshall stated that he was "mistaken" in his first notice because he quit his job on August 30 or 31, 2016. Therefore, he was not at work when the offense occurred on September 1, 2016. He maintained that he was never at A.H.'s residence on that date, but that he was at the hospital all day without access to any transportation. Appellant's App. pp. 90–91. Marshall did not list any witnesses that would testify in support of his alibi defense and informed the court that his brother was deceased.

[21] At a pretrial hearing, Marshall asked the court to allow Robinson to testify that she often visited Marshall's brother in the hospital and Marshall was always present. Robinson did not testify that Marshall was at the hospital on September 1, 2016. The trial court ruled that Robinson would be allowed to testify that Marshall was living at the hospital if the State presented evidence

---

[2] Contrary to the State's argument, Marshall's notice was arguably specific enough to put the State on notice of his claimed alibi.

that he was living elsewhere, but she would not be allowed to testify concerning Marshall's alibi. The trial court reaffirmed its earlier ruling that Marshall would be allowed to testify in his own defense.

[22] For the same reasons expressed in *Washington*, we conclude that the trial court acted within its discretion when it concluded that Marshall failed to establish good cause for the late filing of his two notices of alibi. Marshall's counsels' alleged negligence is not good cause for the tardy filing.[3]

[23] Even if Marshall could establish good cause, he has not established that he was prejudiced by the trial court's decision to exclude his alibi defense. Marshall's only witness or evidence concerning his whereabouts at the time A.H. was assaulted was his own testimony. Marshall was allowed to testify in his defense. Robinson would have only testified that she went to visit Marshall's brother in the hospital every day around 10:00 a.m., that she was not sure which dates he was hospitalized, that Marshall was living in his brother's hospital room, and she saw Marshall at the hospital every time she visited. Tr. Vol. 2, pp. 198–203. Presumably because Robinson's testimony did not aid Marshall in his alibi defense, Marshall withdrew her as a witness. Tr. Vol. 2, p. 204. Effectively, Marshall was allowed to present the only evidence of his claimed alibi.

---

[3] Unlike the defendant in *Washington*, Marshall does not raise any constitutional arguments in his brief.

[24] For all of these reasons, we conclude that Marshall has not established any error in the trial court's decision to exclude his alibi defense.

## Habitual Offender Enhancement

[25] Marshall argues that the habitual offender sentencing enhancement of his Level 5 felony domestic battery conviction is prohibited by Indiana Code section 35-50-2-8(e). That statute provides:

> The state may not seek to have a person sentenced as a habitual offender for a felony offense under this section if the current offense is a misdemeanor that is enhanced to a felony in the same proceeding as the habitual offender proceeding solely because the person had a prior unrelated conviction.

[26] Here, Marshall's misdemeanor domestic battery conviction was enhanced to a Level 5 felony because Marshall had a prior domestic battery conviction against the same victim, A.H. *See* Ind. Code § 35-42-2-1.3(c). Therefore, Marshall argues, and the State agrees, that Indiana Code section 35-50-2-8(e) prohibits an habitual offender enhancement on the Level 5 felony domestic battery conviction. Appellant's Br. at 13–14; Appellee's Br. at 19. *See also Perry v. State,* 78 N.E.3d 1, 10 (Ind. Ct. App. 2017).

[27] The parties do not agree whether the habitual offender adjudication can enhance either of his Level 6 felony strangulation or confinement convictions. Marshall argues that the evidence is insufficient to establish that he was eligible for an habitual sentencing enhancement.

[28] On the date Marshall committed his offenses,[4] Indiana Code section 35-50-2-8 provided that

> (d) A person convicted of a felony offense is a habitual offender if the state proves beyond a reasonable doubt that:
>
> > (1) the person has been convicted of three (3) prior unrelated felonies; and
> >
> > (2) if the person is alleged to have committed a prior unrelated:
> >
> > > (A) Level 5 felony;
> > >
> > > (B) Level 6 felony;
> > >
> > > (C) Class C felony; or
> > >
> > > (D) Class D felony;
> >
> > not more than ten (10) years have elapsed between the time the person was released from imprisonment, probation, or parole (whichever is latest) and the time the person committed the current offense.

[29] Our supreme court considered the statute in *Johnson v. State*, 87 N.E.3d 471 (Ind. 2017) and held:

> For a person to be sentenced as a habitual offender, the State must prove beyond a reasonable doubt that "the person has been convicted of three (3) prior unrelated felonies[.]" Of those three unrelated felonies, subsection (d)(2) requires that if the person has committed "*a* prior unrelated" lower-level felony, it must not have been more than ten years since the person was released and

---

[4] Indiana Code section 35-50-2-8 was amended effective July 1, 2017.

the current offense was committed. The indefinite article "a" is defined as "a) one; one sort of … b) each; any one." Therefore, applying a plain reading to the statute, "a" refers to prior unrelated lower-level felonies used to establish the enhancement under subsection 8(d)(1), and requires that "one," "each," or "any one" of the prior unrelated lower-level felonies meet the ten-year requirement. This outcome is bolstered by the fact that elsewhere in the same section, the legislature used the phrase "at least one," but did not do so here.

*Id.* at 473 (internal citations omitted and emphasis in original).[5] Accordingly, the court held that "the plain meaning of the 2015 version of subsection 8(d) requires that **each** lower-level felony—namely a Level 5, Level 6, Class C, or Class D felony—the State uses to establish subsection 8(d)(1) must meet the ten-year requirement found in subsection 8(d)(2)." *Id.* (emphasis added).

[30] Here, the State alleged that Marshall was convicted of 1) Class D felony theft and/or Class D felony battery on April 10, 2010, 2) Class C felony burglary, Class D felony battery by bodily waste, and/or Class D felony intimidation on April 24, 2002, and 3) Class B felony arson on June 4, 1987. Appellant's App. p. 36. Marshall does not dispute that the 2010 convictions and the B felony conviction can be used to establish that he is an habitual offender. However, he

---

[5] The court acknowledged the General Assembly's amendment to the statute effective July 1, 2017, which now states: "not more than ten (10) years have elapsed between the time the person was released from imprisonment, probation, or parole (whichever is latest) for at least one (1) of the three (3) prior unrelated felonies and the time the person committed the current offense."

contends that the 2002 felony convictions do not qualify under the habitual offender statute because the convictions do not meet the ten-year requirement.

[31] The State was required to prove that not more than ten years elapsed between Marshall's release from imprisonment, probation, or parole for the 2002 felony convictions because they are considered lower level felonies under the statute. *See Johnson*, 87 N.E.3d at 473. On April 24, 2002, Marshall was ordered to serve an aggregate eight-year sentence for the Class C and D felony convictions, and that sentence was enhanced by twelve years because he was found to be an habitual offender. The trial court ordered Marshall to serve fourteen years of the twenty-year sentence executed in the Department of Correction and suspended six years to probation. Appellant's Conf. App. p. 163.

[32] The date that Marshall was released from probation for these offenses was not admitted into evidence. However, the pre-sentence investigation report establishes that Marshall was still on probation for these offenses in 2009. *See* Appellant's Conf. App. pp. 163–64. Therefore, we may reasonably infer that Marshall's release from probation for the 2002 felony offenses was within ten years of September 1, 2016, the date Marshall committed the offense at issue in this appeal.

[33] For all of these reasons, we conclude that the State proved that Marshall is an habitual offender and remand this case to the trial court for re-sentencing consistent with this opinion. *See Johnson*, 87 N.E.3d at 474.

# Conclusion

[34] The trial court acted within its discretion when it excluded evidence of Marshall's alibi defense because Marshall failed to establish good cause for his tardy notice of alibi. However, the trial court erred when it sentenced Marshall by attaching the habitual offender enhancement to the Level 5 felony domestic battery conviction. Therefore, we remand this case to the trial court for resentencing consistent with this opinion.

[35] Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Robb, J., and Pyle, J., concur.